## JAKE SHIPMAN v. THE STATE.

No. 8261.  Delivered June 18, 1924.

Rehearing denied November 19, 1924.

**1.—Theft—Change of Venue—Motion to Quash—Too Late.**

The case originated in Haskell County, and the venue was changed to Jones County. After the change of venue, a motion was made to quash the indictment on the grounds of insufficient description of property alleged to have been stolen. Art. 630, C. C. P., provides that in all cases before a change of venue is ordered all motions to set aside the indictment, and all special pleas and exceptions which are to be determined by the judge and which have been filed, shall be disposed of by the Court. This motion to quash came too late.

**2.—Same—Ownership of Property—In Whom Alleged.**

The indictment in the case properly alleged the ownership of the property in O. B. Poole, the railroad agent in charge of the car in which property was located at the time it was taken.

**3.—Same—Charge of the Court—Covering all Issues.**

Numerous exception to the court's charge, and special instructions presented by appellant and refused by the court are complained of in this record. When all issues presented by the evidence, and the law covering a case is correctly and fully given in the court's main charge, special charges are properly refused.

Appeal from the District Court of Jones County. Tried below before the Hon. W. R. Chapman, Judge.

Appeal from a conviction of theft; penalty, two years in the penitentiary.

*Lon A. Brooks,* and *A. J. Smith,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Jones County of theft, and his punishment fixed at two years in the penitentiary.

The case originated in Haskell County and the venue was changed to Jones County. After the venue had been changed a motion was made to quash the indictment upon the ground that the property alleged to have been taken was not sufficiently described to put appellant upon notice of what the particular property was. By the terms of Article 630 C. C. P. it is provided that in all cases before a change of venue is ordered, all motions to set aside the indictment, and all special pleas and exceptions which are to be determined by the

judge, and which have been filed, shall be disposed of by the court. It is said in a number of cases decided by this court that this article contemplates that all questions relating to the form of the indictment must be raised and disposed of before a change of venue, and that nothing should remain thereafter but the trial of the general issue. Loggins v. State, 8 Texas Crim. App., 434; Ex parte Cox, 12 Texas Crim. App., 665; Barr v. State, 16 Texas Crim. App., 333; Fitzgerald v. State, 87 Texas Crim. Rep., 34; Scitern v. State, 87 Texas Crim. Rep., 112; Finch v. State, 232 S. W. Rep., 528. Under the rule laid down in these cases it is clear that the motion to quash the indictment came too late.

John N. Stephens was getting ready to move a stock of goods from Sagerton in Haskell County and was having the goods packed and put into railroad cars for purposes of shipment. On the night of February 20, 1922, a part of the goods had been loaded in said cars. On that night it appears without dispute that appellant and others took from one of the cars three boxes of drygoods of the value of several hundred dollars. The boxes were taken to the city calaboose where they were placed and covered with some cotton and appellant locked the door, using a lock that belonged to him. On the trial he testified that Stephens was indebted to him in the sum of several hundred dollars and had told him that he was in a failing condition and that representatives of some of his other creditors were putting on a sale and that he was unable to pay appellant but agreed that appellant might take three boxes of drygoods out of the car in payment of the debt which he owed appellant. We quote from the testimony of appellant on this point:

"In the last conversation I had with him he said we would get the goods out of the car after the credit man left his store, after he left and went over to the hotel; he told me to get them that night, the night they were loaded, he said that would be my only chance. He said Minter Moore would help me. Minter Moore was an attorney representing him, he said Minter Moore was his attorney. * * * I went and got the goods; he told me he would have three boxes right about the door and he would have them marked with a cross and there would be about enough goods in the three boxes to pay me. He didn't say anything about any other boxes being marked to me. Emmett Lynch and Minter Moore went down there with me; we went there about eight-thirty or nine o'clock; we went from the back end of the store. * * * We got three boxes out of the car and carried them in that trailer up to the calaboose, about a hundred yards. Mr. Stephens told me not to put them in my store until he got moved away."

In rebuttal of this the State put Mr. Stephens on the stand and he testified that he owed appellant nothing; that he never had any conversation with him about any indebtedness because he owed him

nothing; that he did not authorize appellant or anybody else to go into the car in which the goods were loaded, and that he did not give appellant permission in any form or fashion to take the goods. He specifically denied all of the matters given in testimony by appellant relating to any kind of connivance or agreement between them in pursuance of which appellant claimed that he got the goods.

As we view this matter it resolved itself entirely into the question as to whether the jury believed appellant or Stephens. There appears nothing in the refusal of the motion to quash, or the bill of exceptions complaining thereof, for the reason we have above stated. We have carefully examined the bill of exceptions complaining of the refusal of the court to instruct the jury either that Stephens was an accomplice or that the jury might pass on the question whether he was an accomplice. We fail to discern any sufficient reason for believing Stephens to be an accomplice.

The property in question was charged in the indictment to belong to O. B. Poole, the railroad agent in charge of said car at the time the property was taken. This was proper. Mr. Poole testified that he had the actual care, control and management of the car and its contents on the night of February 20, 1922. He had sealed the car when the parties finished putting the goods in. We find nothing in appellant's exception to the charge of the court based on the proposition that the jury were not instructed that they must believe beyond a reasonable doubt that the drygoods alleged to have been stolen were in the actual care, control and management of Mr. Poole. The charge followed the usual form and instructed the jury that if they believed beyond a reasonable doubt that appellant did take from the possession of O. B. Poole the property and that same was then and there the corporeal personal property of and belonging to the said O. B. Poole, and was taken without the consent of the said O. B. Poole and with the intent on the part of appellant to deprive said Poole of the value of same and to appropriate it to the benefit of appellant, they should find him guilty. This was sufficient on this point. The charges also told the jury that unless they believed beyond a reasonable doubt that O. B. Poole was in possession of the property at the time and place it was taken, if taken, they should acquit. The charge also told the jury that if they believed that prior to the date of the alleged theft Mr. Stephens gave defendant permission to go to the box car and take from it three boxes of drygoods marked X, or if they had a reasonable doubt thereof, they should acquit. There was an exception to the charge because it did not instruct the jury affirmatively upon the defendant's theory. We regret that we cannot agree to this proposition. In that part of the charge just mentioned the court did give the jury an affirmative presentation of the only defensive theory which we find in the record. We are not in accord with the idea

that it becomes necessary for the court to group the defensive facts in the charge in the manner suggested by one of the exceptions.

An exception was taken to the charge because it did not instruct the jury that if appellant believed that he had the authority and permission of said Stephens to take the property from the box car in settlement of any claim or account that Stephens might have owed him, the jury should acquit. The only pertinent proposition involved was whether Stephens gave the appellant his permission to take the property. Aside from the conversation testified to by appellant between himself and Stephens, which was specifically denied by Stephens, there was no testimony in the case otherwise tending to support or create belief on the part of appellant of any right to enter said car or take the property. In other words, in our opinion the charge of the court which told the jury that if they believed that appellant had Stephens' permission to enter the car and take the goods, or if they had a reasonable doubt on that proposition, they should acquit, fully covered the defensive theory, and he would have derived no additional benefit from a charge that if he believed he had Stephens' permission, etc.

There is an exception to paragraph 8 of the court's charge, this being the charge in which the court applied the law to the facts, upon the ground that it was misleading and confusing and might cause the jury to convict for the taking of the property from the possession of Mr. Poole, although they might believe that Mr. Stephens had theretofore given the defendant permision to take said property. We do not believe the charge open to any such objection. The appellant had testified positively that Stephens told him to go to this car and take three boxes of goods which he would place near the door and upon which there would be the mark "X." Upon this conversation and the permission thus given, appellant relied. Stephens denied this entirely. As pertinently presenting the appellant's side of this the court gave the charge relative to Mr. Stephens' permission to take the goods, which is above referred to. We do not think a jury composed of ordinarily intelligent men could have found the charge misleading or confusing.

The evidence in the case amply supports the verdict. Appellant's counsel has referred us to a recent case by this court, Vol. 257 S. W. Rep., 893, which seeme to us to have no application. Same was a burglary case and the issue involved in this case is purely one of theft.

Finding no error in the record, an affirmance will be ordered.

*Affirmed.*

### ON REHEARING.

LATTIMORE, JUDGE.—Appellant stresses only the proposition that the charge of the learned trial court was wrong in that it did not

affirmatively present to the jury the theory of the defense. The matter was discussed at some length in the original opinion. The defensive theory referred to was that appellant went into the box car and got the goods in question with the consent of Mr. Stephens who owned them. In the original opinion reference is made to the charge on this point in which the jury were told that if they believed Stephens gave to appellant permission to go to the box car and take the goods, or *if they had a reasonable doubt thereof,* they should acquit. We are at a loss to know how the court could have more pointedly submitted appellant's defensive theory. We are cited to Bird v. State, 90 S. W. Rep., 651; Parsons v. State, 206 S. W. Rep., 196, and Adams v. State, 215 S. W. Rep., 301. As we understand the Bird and Parsons cases, supra, the court omitted to instruct the jury that the State must satisfy the jury beyond a reasonable doubt that the defensive theory was not true. In the instant case the court did insert in his charge the very element left out of the two cases mentioned, i. e., did tell the jury that if they believed the accused had Stephns' permission, or *if they had a reasonable doubt on such point,* they should acquit. The Adams case, supra, is a case which was reversed on the facts, the court holding that it did not show sufficiently a criminal intent.

As stated in our original opinion and as borne out by the record, the case turned on whether the jury believed Stephens, who testified that he had at no time given appellant any consent or direction to take the goods, to the extent that they had no reasonable doubt as to the truth of his testimony,—or whether they believed appellant who asserted that he had such consent. The jury resolved the question against appellant under what seems to us to be an appropriate presentation of the law.

The motion for rehearing is overruled.

*Overruled.*


### ON APPLICATION FOR STAY OF MANDATE.

LATTIMORE, JUDGE.—Appellant's motion for rehearing has been overruled, and he now files an application for stay of the mandate apparently upon the ground that he desires time to arrange his business, that he is not in good health, and that his wife is not in good health. This court is given no power to stay a mandate for any such reasons.

The application will be overruled.

*Overruled.*