## BOB WHITE V. THE STATE.

No. 20188. Judgment Affirmed March 22, 1939.
Rehearing Denied May 17, 1939.
Appealed to United States Supreme Court.
Stay of Execution Granted June 13, 1939.
Petition for Writ of Certiorari Denied by United
States Supreme Court November 13, 1939.
Order Revoking Stay of Execution January 6, 1940.

The opinion states the case.

*J. P. Rogers, Jay M. Johnson,* and *S. F. Hill,* all of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant is a negro; he was charged with rape by violence, and was awarded the death penalty. He was tried heretofore in Polk County, and received the death penalty on his former trial, which will be found reported in (135 Texas Crim. Rep. 210) 117 S. W. (2d) 450.

Upon appellant's application this cause was transferred on a change of venue to Montgomery County, which is in the same judicial district as Polk County.

Appellant filed a motion to quash the indictment in this cause in the district court of Montgomery County,—after the same had been moved thereto, and at the time same was called for trial,—on the ground that he, being a person of the African race, had been discriminated against because of his color, in that no person of African descent was drawn or served on the grand jury that found the indictment against him, and that his constitutional rights under the United States Constitution had been infringed upon and denied to him. When his motion was called to the attention of the trial court he qualified bill of exceptions No. 2 relative thereto as follows: "That after said motion was filed the State filed its answer thereto, setting up that his motion was not timely in that it had not been presented before a change of venue was had from Polk County to Montgomery County, Texas. Notwithstanding that said motion to quash the indictment had not been presented before a change of venue was had from Polk County to Montgomery County, after said motion had been filed and the State had duly filed its answer, the court asked the defendant if he had any proof to offer in support of his motion, to which inquiry no answer was given, and neither was there any proof offered in support of said motion; after which the court in all things overruled said motion to quash the indictment."

In the first place such motion came too late; it should have been filed and disposed of prior to the filing of the motion for a change of venue by appellant and the granting of the same in Polk County. Art. 564, C. C. P. provides: "An application for a change of venue may be heard and determined before either party had announced ready for trial; but, in all cases before a change of venue is ordered, all motions to set aside the indictment, and all special pleas and exceptions which are to be determined by the judge, and which have been filed, shall be disposed of by the court, and, if overruled, the plea of not guilty entered."

That this article contemplates the hearing of a motion to quash the indictment because of the exclusion of members of the negro race prior to the change of venue, we have heretofore held in the Shipman case, 98 Texas Crim. Rep. 533, 265 S. W. 570, as follows: "By the terms of Article 630, C. C. P. (now Art. 564) it is provided that in all cases before a change of venue is ordered, all motions to set aside the indictment, and

all special pleas and exceptions which are to be determined by the judge, and which have been filed, shall be disposed of by the court. It is said in a number of cases decided by this court that this article contemplates that all questions relating to the form of the indictment must be raised and disposed of before a change of venue, and that nothing should remain thereafter but the trial of the general issue. Loggins v. State, 8 Texas Crim. App. 434; Ex parte Cox, 12 Texas Crim. App. 665; Barr v. State, 16 Texas Crim. App. 333; Fitzgerald v. State, 87 Texas Crim. Rep. 34; Scitern v. State, 87 Texas Crim. Rep. 112; Finch v. State, 232 S. W. Rep. 528."

Again we quote: "This article requires that all matters which do not affect the substance of the change must be disposed of before the defendant applies for change of venue. Vance v. State, 34 Texas Crim. Rep. 395, 30 S. W. Rep. 792, and cases there cited; Goode v. State, 57 Texas Crim. Rep. 220, 123 S. W. 597." Note 4, p. 490, Vernon's Ann. C. C. P. Vol. 1.

This article providing that before ordering change of venue judge shall decide motions to set aside indictment, contemplates that any attack on the indictment shall be in county where it was returned. See Parr v. State, 1 S. W. (2d) 892, 108 Texas Crim. Rep. 551.

It will be noted that when appellant offered his motion to quash the indictment in Montgomery County, that no testimony of any kind was offered by him to sustain the allegations in his motion, and it seems that the State was correct in its replication to such motion, in that it moved to strike the motion because the same was filed too late, and in the improper court, and we think the court was correct in overruling such motion. It seems, however, that this motion was again brought before the trial court in appellant's motion for a new trial, and much testimony was heard thereon, and again we think the careful trial judge was justified in his ruling thereon. In the statement of facts shown at the hearing of the motion for a new trial, the jury commissioners who drew the grand jury list for the term at which appellant was indicted, testified that they selected the list of grand jurors because they knew them to be good men, without regard to color or race; that they did not take into consideration the color or race of any individual; they only tried to get good men, and men qualified to serve on the grand jury, representative citizens of the county. They took the names from the tax rolls, and had no thought regarding their color; they did not intentionally leave off any person because of race or color. There were no negroes selected

on the grand jury however, and that they never considered that from a position of color; they never thought of it. It is our opinion that when appellant finally made his attempt to show a discrimination against him in the selection of the grand jury that indicted him, it was shown to the contrary, that is, that no such intentional discrimination was had or shown. We fail to perceive any error shown in this bill No. 2.

Bill of exceptions No. 1 relates to an effort upon appellant's part to quash the special venire of 100 men ordered by the court from which to select the jury which finally tried this appellant,—on account of the fact that no negro was presented on said jury venire as a possible juror, thereby evidencing a discrimination against appellant because of his color and race. There was no testimony offered relative to this matter at the time the motion was presented, and the testimony relative thereto only appears in the statement of facts heard on the motion for a new trial. It appears therefrom that the jury was selected from a list that had been previously selected by jury commissioners, and was drawn in the proper way by the proper officers. That there was no negro on the jury venire, but there was a negro on the grand jury in that county at that time. There was no testimony of any kind tending to show that negroes had been discriminated against in the selection of the special venire presented in this case, although no negro was present on this venire, and we think the court was correct in his overruling this motion to quash.

Bill of exceptions No. 3 complains of the introduction of an alleged confession by the defendant, because the same was claimed to have been extorted from him by means of a whipping and violence shown to him, and under duress and threats, thus rendering the same involuntary; and also that same was finally made to certain persons who were highly prejudiced towards the appellant; that same was made under promises to appellant, and was not his confession but was dictated by one of the prosecuting officers, and many other· objections were made thereto as set forth in thirteen separate and distinct paragraphs in the bill. The court in an exhaustive charge thereon submitted to the jury practically the whole burden of appellant's objections to this confession, and in every instance instructed the jury to not consider the confession for any purpose unless they believed beyond a reasonable doubt that same was made under a proper warning, freely and voluntarily, and not under any fear, duress or coercion, fraud, persuasion, promise of immunity, or any other improper in-

fluence. In fact the court surely went as far, if not farther, in his charge relative to such confession as the rights of the appellant required him to go. In any event we see no error reflected in such bill.

We do not think it necessary to review bill of exceptions No. 4, but have considered the same, and it is overruled.

Bill of exceptions No. 5 does not show what numerous questions were asked appellant relative to his testimony at a previous trial, and is so incomplete and vague that we cannot tell what is finally complained of, and in such a condition the same is overruled.

Bill of exceptions No. 6 complains of the action of the trial court in withdrawing from the jury appellant's answer to a leading question. Under the court's qualification thereto, we see no error therein. If appellant desired the answer to his question, the same could have readily been framed in an unobjectionable manner, and doubtless the jury could have received the same under sanction of the court. This same ruling also applies to bill of exceptions No. 7.

Bill of exceptions No. 8 complains of the remarks of the private prosecutor, Z. L. Foreman, wherein he is alleged to have said: "It doesn't make any difference to Mr. Johnson and Mr. Rogers (appellant's attorneys) what happened to Mrs. Cochran, (the injured lady). As far as they are concerned, their innocent negro should be turned loose." It is shown by this bill that immediately upon objection being made thereto, the court instructed the jury to disregard such remarks. It is also shown by the bill that appellant objected to all of such remarks and preserved his bill. A portion of these remarks were surely not objectionable, and we do not think that if objectionable they were of such a material nature as that they could have unfavorably influenced the jury, especially in the light of the court's instruction relative thereto.

Bill of exceptions No. 9 complains of the following remarks of Mr. Foreman in his argument to the jury: "The facts in this case show that Bob White went right up into that room that is there in this statement, when you gentlemen take it and look at it,—and I don't believe Ernest Coker would have thought of it; I don't believe Appling would have thought of it; I don't believe Herman Crocker would have thought of it; I know I would not have thought of it; Bob White says this: 'When I first got into the room I 'Zerned' a woman lying in the bed.' Why, do you imagine, that was put there? Just be-

cause Coker used that word; could you believe he 'zerned' a woman lying in the bed, I don't know whether he could say that in the army or not; I don't know whether he could say that in the American Legion or not. I would be ashamed to tell any jury, with the moon shining and a woman lying there like she said, with her head about a foot from the window— I would be ashamed to say—and the man came to that door there, that he could not see a woman on the bed in this moon shine. I would honestly be ashamed. Bob White said 'zerned' a woman lying on the bed. Gentlemen of the Jury, you believe that Johnson—." These remarks were objected to as being out of the record, at which time the court admonished counsel to stay within the record. A reading of the statement of appellant as well as the facts in the case convince us that these remarks were a fairly deducible argument from the facts proven.

Bill of exception No. 10 complains of the argument of Mr. Foreman wherein he passed certain complimentary remarks relative to Mr. Holliday, the sheriff of Polk County, at the time of the commission of this alleged offense. While these remarks concerning his ability as an officer were surely gratifying to Mr. Holliday, we do not think they injuriously affected this appellant's cause before the jury. We also note that the trial court, at appellant's request, instructed the jury to disregard such remarks.

Bill of exceptions No. 11 is so incomplete that we would not consider the same except for the fact of the gravity of the verdict herein. We do gather therefrom that a doctor was placed upon the stand by the State who testified that he took some fluid from the private parts of the injured lady herein about two hours after the time she was alleged to have been raped, and that such fluid contained active, live sperm, less than six hours old, such as would be contained in semen from a male person. The main objection thereto being that it was impossible to tell from whom the semen came, whether a white or black person, such testimony being entirely speculative, and taken at too great a time removed from the alleged hour of the crime committed on this lady. The doctor also testified as to the lady's highly nervous condition, and that these germs were very active when examined by him under a microscope; that their activity would last only about six hours. We think that the objection to the testimony would apply to its weight rather than to its admissibility, and see no error herein.

Appellant complains in his brief of the fact that while

the Ninth Judicial District Court was sitting at Conroe, in Montgomery County, at a regular term thereof, the district judge of said Ninth District convened a special term in Polk County, one of the counties of this district, and impaneled the grand jury that indicted this appellant, thus having two courts sitting in the same district, although in different counties, at the same time. He contends that an order should be shown in this record adjourning or recessing the regular court at Conroe before it would be legal to convene a special term in Polk County, and that therefore the indictment found against him in Polk County at such special term was without warrant of law and void. That there can be two terms of the same district court at the same time in different counties of the district is a well recognized legal doctrine. We quote from 11 Tex. Jur., p. 816: "* * Similarly a judge may hold a regular term in one county of his district, and during such regular term go to another county in his district and hold a special term, going backward and forward to make orders and transact the business of the courts," citing Wilson v. State, 87 Texas Crim. Rep. 538, 223 S. W. Rep. 217.

We quote from the Wilson case, supra: "The Elliott Case, 58 Tex. Cr. R. 200, 125 S. W. 568, seems in point. It appears in that case that, while the court was in session in Anderson county, the judge went to Houston county, another county in his district, and there convened court, and organized a grand jury, which proceeded to function. He then returned to Anderson county, where he was holding court. This court upheld the action of the trial court in such procedure, and refused to hold invalid an indictment returned by the grand jury impaneled and authorized to act at said special term."

This matter has been gone into rather fully by Judge Hawkins in the opinion on motion for a rehearing in the late case of Crausby v. State, 26 S. W. (2d) 246, and he has reviewed therein the authorities that uphold the action of the trial judge in this cause. Therein is found a quotation from McIntosh v. State, 56 Texas Crim. Rep. 137, as follows: "He was the district judge and the law empowered him to convene a special term of the district court, and for that purpose he might, if he saw proper, adjourn another court at a different place in his district, or suspend the session of said court in such other county, or recess the court in order to hold a special term, if public necessity and the public good required it."

The facts in this case show that Mrs. Ruby Cochran was the wife of W. S. Cochran, and that she was the mother of two

little boys, one eleven and the other thirteen years old; that her husband was a farmer, and also had a store on his farm near his home. That on the night of the day charged in the indictment Mr. Cochran was absent from his home, and his wife was there alone, save for her two little boys. That after she had gotten the little boys to sleep downstairs she retired to a large room upstairs, and prepared for bed, removing all her clothing and placing a nightgown on her body. That she had a pistol that she oftentimes took to bed with her when alone. That early in the night she heard some peculiar noises in the house which aroused her, but to which she paid no further attention other than to take her pistol in her hand and listen. Again she heard a noise, and something caused her bed to shake. Her bed was near a window, with the shade up, and after she felt her bed shake she said "Joe, is that you?" Her little boys had sometimes been in the habit of coming into their mother's room when they awakened at night, and when she made this remark she thought it might have been her son Joe who had shaken her bed. Immediately some one leaped upon her on the bed and she began to struggle with him. She then jumped off the bed, screaming, and ran to the window and attempted to leap through it, and struck her head thereon, but on account of such window being screened, she was unable to get through before the intruder grabbed her and pulled her back. She continued struggling with him, and grasped one of his hands and found an open knife therein, which was pulled through her hand, cutting it. She then attempted to reason with this person, and told him "Don't you know what the Cochrans will do to you," and he replied, with an oath "I don't care what they do to me; I don't care what happens to me." After having become exhausted in her struggle, the intruder threw her to the floor and ravished her, threatened to kill her, and holding his knife on her. This man satisfied his lust upon her body; she being in such a helpless condition, that after leaving her body on the floor and starting out of the room, he returned and placed his hand on her, and then immediately left. As soon as she had recovered Mrs. Cochran gave the alarm to the neighbors, and her husband's brothers immediately, and she was taken into town to a hospital. Barefooted tracks were found near the house, and appellant in his confession corroborates the story of Mrs. Cochran in most of the details. He gave a description of the interior of the house, from its entry until he left the same; he tells of his progress through this house which he had never before entered, giving many details that could only have been known by observation; he tells of

this conversation relative to what the Cochrans would do to him, as well as what he did to Mrs. Cochran at the scene. He also told of the incident of the knife, and her attempts to get away by leaping through the upstairs window; how he dragged her back, and of hearing something fall on the floor when she lost her pistol; he also told of returning and feeling her body to see whether she was dead, and then he described his barefooted flight from the house. He also told of an incident that happened on his trip to the house relative to passing a neighbor's home and hearing a little girl complaining to her father because of the fact that a big dog had bitten the little girl's puppy, which incident found confirmation in the statement of both the little girl and her father, and which could only have been known to him by his having heard it, thus showing his proximity to the Cochran home on the night in question. His confession contained so many corroborative statements of Mrs. Cochran's testimony that it is abundantly convincing that he was bound to have been present at the commission of the assault. Mrs. Cochran did not identify the appellant; there was no light burning in her home at the time the crime was committed, but she does say that her assailant was barefooted; that he had a very offensive breath, and was undoubtedly a negro.

The district judge gave a comprehensive charge on the law of the case, and in an excess of caution embodied therein a charge on circumstantial evidence, and we think that he has accorded the appellant every right that he was entitled to under our laws and Constitution. We think that the facts unerringly point to the appellant as the assailant of this lady, and that they exclude every other reasonable hypothesis than his guilt. We think that under the facts the jury was justified in the assessment of the extreme penalty, and so believing this judgment is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

In his motion for rehearing appellant insists that we were in error in the original opinion in making the following statement: "Immediately someone leaped upon her on the bed and she began to struggle with him. She then jumped off the bed, screamed, and ran to the window and attempted to leap through it." Referring to page 71 of the statement of facts, we find in the testimony of the prosecutrix the following statement: "There was a struggle and I jumped off on my right and

screamed and ran and tried to get away and so I just saw the outline of the window and then I tried to get through the window."

Appellant reiterates his contention that the jury commission discriminated against negroes in the selection of the grand jury. We quote from the court's qualification appended to bill of exception No. 2, as follows: "The defendant filed his motion to quash the indictment for the reason that there were no negroes among the jury commission who selected the grand jury which indicted the defendant, and for the reason that there were no negroes upon the grand jury which indicted the defendant, and that there were no negroes drawn on same, and for the reason that negroes were purposely left off of the jury commission and grand jury. That after said motion was filed the state filed its answer thereto, setting up that his motion was not timely in that it had not been presented before a change of venue was had from Polk County to Montgomery County, Texas. Notwithstanding that said motion to quash the indictment had not been presented before a change of venue was had from Polk County to Montgomery County, after said motion had been filed and the state had duly filed its answer, the court asked the defendant if he had any proof to offer in support of his motion, to which inquiry no answer was given, and neither was there any proof offered in support of said motion; after which the court in all things overruled said motion to quash the indictment." It appears that proof was offered in support of the motion on the hearing of the motion for new trial. This was too late. We quote from Langrum v. State, 79 S. W. (2d) 850, as follows: "Appellant challenges the sufficiency of the indictment upon the ground that it was obnoxious to the Fourteenth Amendment to the Federal Constitution, in that there was race discrimination against appellant in the selection and action of the grand jury which found the indictment against him. The contention is untenable, for the reason that it was waived by the appellant. The waiver consisted in his pleading to the indictment and proceeding to trial without raising the question upon which he now relies. From the record it definitely appears that appellant made no complaint upon the ground mentioned during his trial, but after conviction he, for the first time, in his motion for new trial presented the plea to which reference is made. The controlling precedents are collated in the case of Jaurez v. State, 102 Tex. Cr. R. 297 (see page 301), 277 S. W. 1091." The qualification appended to the bill of exception shows that before appellant

pleaded to the indictment the court asked appellant if he had any proof to offer in support of his motion. Appellant gave no answer but proceeded to trial. Having waived his right, he was in no position to assert in his motion for new trial that race discrimination had been practiced in the selection of the grand jury.

A careful re-examination of the record in the light of appellant's motion for rehearing leaves us of opinion that the proper disposition was made of the appeal in the original opinion.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ORDER STAYING EXECUTION.

HAWKINS, Judge.
GRAVES, Judge.

On this the 13th day of June, 1939, there came on to be heard the application of Bob White, appellant in the above entitled and numbered cause, praying for a stay of execution of the judgment heretofore affirmed by this court on March 22, 1939, and motion for rehearing in said cause was overruled on May 17th, 1939.

It appears that appellant has now pending before the Supreme Court of the United States an application for writ of certiorari seeking a review of the judgment of this court in said cause. It further appears that in said application appellant alleges the existence of a substantial Federal question in the case upon which this court has ruled adversely to appellant, and that said application is made in good faith.

It further appears that the Supreme Court of the United States is now in vacation and that said application for writ of certiorari was filed in said court on the 6th day of June, 1939, and that said court can not hear said application until the court shall have reconvened in its October, 1939, session; and that the sentence passed upon appellant, and which he seeks to have this court to stay awaiting action of the Supreme Court of the United States is a death penalty, and unless same is stayed appellant will be executed by the penitentiary authorities of the State of Texas before the reconvening of said Supreme Court of the United States.

The application of appellant for the stay of execution is hereby granted and the Warden of the State Penitentiary of the State of Texas is hereby restrained from executing appellant under the judgment of conviction and the mandate of this court until the Supreme Court of the United States shall have acted upon said application for the said writ of certiorari.

It is not intended by the entry of this order for the stay of execution that this court entertains doubt as to the correctness of the opinions heretofore rendered in this cause, but the stay is granted in order that the Supreme Court of the United States may have an opportunity to review the action of this court in the premises.

This the 13th day of June, A. D. 1939.

### ORDER REVOKING STAY OF EXECUTION.

HAWKINS, Presiding Judge.

WHEREAS, on June 13th, 1939, a stay of execution order was issued by this Court restraining the Warden of the State penitentiary from executing appellant under the judgment of conviction and the mandate of this Court until the Supreme Court of the United States should have acted upon an application for certiorari to review the action of the Court of Criminal Appeals of Texas, and

WHEREAS, the said Supreme Court of the United States did at its October term, 1939, deny said petition as is evidenced by the following certified copy of said denial order now on file in the Court of Criminal Appeals of Texas, viz:—

"SUPREME COURT OF THE UNITED STATES
No. 87—— October Term, 1939
Bob White,
Petitioner,
vs.
The State of Texas.

On petition for writ of Certiorari to the Court of Criminal Appeals court of the State of Texas.

On consideration of the petition for a writ of certiorari herein to the Court of Criminal Appeals Court of the State of Texas —————— and of the argument of counsel thereupon had,

It is now here ordered by the Court that the said petition be, and the same is hereby denied.

November 13, 1939.

Mr. Justice Butler took no part in the consideration and decision of this application (Seal of the Supreme Court of the United States.)

       A true copy

            Test: CHARLES ELMORE CROPLEY,

    Clerk of the Supreme Court of the United States

         By (signed) Hugh W. Barr,

                          Deputy."

NOW, THEREFORE, it is the Order of the Court of Criminal Appeals of Texas that the stay of execution order is hereby revoked and set aside, and the Clerk of this Court directed to issue an alias mandate, and transmit same together with a certified copy of this order to the District Court of Montgomery County, Texas, authorizing and directing said Court to proceed to carry out the judgment and mandate of this Court.

This the 6th day of January, A. D. 1940.

### ORDER

HAWKINS, Presiding Judge.

The judgment of conviction was affirmed on March 22, 1939. Motion for rehearing was overruled May 17, 1939. Appellant made application to the Supreme Court of the United States for writ of certiorari to review the action of this Court. On November 13, 1939, the said Supreme Court of the United States denied the writ, and certified its action to this Court whereupon the stay of execution order was revoked on January 6, 1940, and an alias mandate directed to be issued.

Later, upon motion for rehearing by appellant, the Supreme Court of the United States set aside its former order refusing the writ of certiorari, granted same, and reversed the judgment of this Court, and remanded said cause to this Court for further proceedings not inconsistent with the opinion of said Supreme Court of the United States.

Therefore, in compliance with said opinion this cause is remanded to the trial court for further proceeding in said cause, as may be consistent with the opinion of the Supreme Court of the United States.

Accompanying this order, and as a part thereof is a certified copy of the mandate from the Supreme Court of the United States, now on file as a part of the record in said cause.

This 28th day of June, 1940.