## WILLIAM WARD V. THE STATE.

No. 21633. Delivered June 18, 1941.
State's Motion for Rehearing Granted November 12, 1941.
Appellant's Motion for Rehearing Denied February 18, 1942.
Appealed to United States Supreme Court.
Petition for Writ of Certiorari Granted by United States
Supreme Court April 27, 1942.
Mandate of United States Supreme Court, Reversing the Judgment of the
Court of Criminal Appeals, Filed July 2, 1942, in vacation.
Order of Court of Criminal Appeals, remanding cause to Trial Court for
further proceedings therein as may be consistent with the order
and opinion of the Supreme Court of the United States,
filed October 7, 1942.

BEAUCHAMP, Judge, dissenting.

The opinion states the case.

*John A. Cook* and *T. R. Florey, Jr.,* both of Mount Pleasant, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Under an indictment charging the malicious murder of Levi Brown, by strangling him with the hands, appellant was convicted of murder without malice and his punishment assessed at three years' confinement in the State penitentiary.

Early Sunday morning, June 25th, 1939, the body of deceased was found in the northeast section of the City of Mt. Pleasant, in the vicinity of the railroad tracks, and near a blacksmith shop and a shirt factory. It was lying in grass about knee high. There were no physical signs or evidences of a struggle or combat. Deceased was a man 72 years of age and had lived in and around Mt. Pleasant for more than 12 years. At the time of his death, he actually resided at Omaha, in Morris County. He was last seen alive on Saturday night, June 24th, 1939, standing on a street corner in Mt. Pleasant. He was seen leaving this place in the company of appellant and a woman, both negroes, and going in the general direction of where his body was found. A short time later, the appellant and the woman were seen to return, the woman going in a southerly direction and the appellant returning in the direction whence they came and in which deceased had gone.

When found, the body was fully dressed. The front of the pants was open. The front of the tail of the shirt was exposed, with blood spots or bloodstains thereon. Glasses worn by deceased were on his head. His watch was in his pocket. There was no evidence indicating robbery. The skin of the neck and throat was bruised, lacerated and discolored. The face was swollen and the eyes distended. The head of the penis showed

slight lacerations to the extent that it had bled. The doctor, who made an examination of the body there on the ground, as well as after its removal, said that, in his opinion, death was caused by strangulation.

There was evidence that, for some time, deceased had been afflicted with a heart ailment; and, under doctors orders, he had taken digitalis regularly. On the day of his death, he took a dose of digitalis before leaving home.

To show guilt, the State, in addition to the foregoing facts, relied upon the written confession of appellant, made to the County Attorney of Henderson County, at Athens, on the 29th day of June, 1939. The details set forth in said confession are of such a revolting nature as that no useful purpose would be served to here set them out. Suffice it to say that, in the confession, appellant admitted that he choked deceased to death with his hands, after he had engaged in an act against nature upon deceased, performed under a prior agreement that deceased pay him a dollar therefor, and that, after completion of the act, the deceased refused to pay him, and cursed and hit him. We quote from the confession, upon this point, as follows:

"He then hit me and I ran into him and knocked him over on his back. I then got down over him and choked him. I held him around his neck with my hands for about five minutes. I got up and ran off, leaving Mr. Brown on the ground. He was not moving and I could not tell whether or not he was alive."

Appellant testified as a witness in his own behalf and denied any connection with the death of deceased. He asserted the defense of alibi, and introduced testimony corroborative of this defensive theory. He claimed that he signed the confession only as a result of whippings, beating and physical violence applied by the officers who had him in custody.

Appellant objected to the introduction of the confession because it was not free and voluntary but was obtained as a result of the violence used by the officers. The trial court permitted the facts relative thereto to be fully developed, at the conclusion of which he overruled the objection and submitted the issue of voluntariness to the jury by appropriate instructions to the effect that, if they entertained a reasonable doubt as to whether the confession was freely and voluntarily made, to disregard the same.

It is appellant's contention that the facts as a whole show that the confession was not freely and voluntarily made, and that it was, therefore, inadmissible as a matter of law.

To determine this question, we first call attention to the following facts, which appear in the record undisputed and uncontroverted, viz.:

On the same day the body was found, appellant and several other negroes were arrested and taken into custody and questioned, during which questioning one of the officers slapped appellant, his reason therefor being that appellant had called him a liar. Appellant was later, and on the same day, released from custody, with no charge preferred against him. Two days thereafter, or on Tuesday night, appellant was taken into custody by the Sheriff of Morris County and the local constable. They began a series of moving appellant from one town or jail to another. He was first carried to Daingerfield, in Morris County; then to Pittsburg, in Camp County; then to Gilmer; in Upshur County; then back to Pittsburg; and, from Pittsburg to Tyler, in Smith County. At these places, he was placed in jail. At Tyler, he was turned over to two highway patrolmen, who in turn carried him to Athens, in Henderson County, where he was turned over to Sheriff Sweeten of that county. Athens is 110 miles from Mt. Pleasant. The time consumed in these movements was from Tuesday night until the following Friday afternoon. The confession was made in the jail at Athens and within about thirty minutes after appellant was placed therein.

Constable Redfern, one of the arresting officers, and who had custody of appellant until he was placed in the Tyler jail, testified, among other things, as follows:

"In moving the defendant as I have testified, the sole and only consideration in doing so was to try to get a statement from the negro in talking to him alone or in connection with others who possibly knew something about the crime, and I was protecting him against rumors and threats of mob violence."

Highway Patrol Sergeant Gordon, who carried appellant from Tyler to Athens, said: "We didn't do one thing in the world to him to make him make that statement. - - - - - - - - - - - - - We just talked to him to get that statement. Yes sir, we just sweet talked him out of it."

Sheriff Sweeten of Henderson County, in whose custody the appellant was when the confession was made, said: "We talked that confession out of him. It took us twenty or thirty minutes to get that confession."

The County Attorney of Titus County testified that he saw appellant and talked to him at two different times, in two different jails, i.e., Gilmer and Pittsburg, before he was carried to Tyler, and that, at each of such times, the appellant told him that he would make any statement that he, the county attorney, wanted him to make, about the killing, but that he was not guilty of committing any crime in connection with the deceased. The county attorney refused to accept a statement under such circumstances, telling appellant that any statement he took from him would have to come freely and voluntarily. After the confession had been made at Athens, the county attorney talked with appellant in the jail at Tyler, at which time appellant admitted that he had had something to do with the death of deceased.

As stated, the foregoing facts appear undisputed.

We now call attention to the facts which were disputed and controverted: whether there were threats of mob violence towards the appellant such as justified the officers in the exercise of their discretion in moving appellant out of Titus County and in carrying him to the different jails in order to keep his exact whereabouts secret.

Without setting out the testimony in detail, appellant testified to severe beatings and whippings with a leather strap, especially at Athens, while in the custody of the officers; also, that he was burned by lighted cigarettes being applied to his body.

Each and every officer who had custody of the appellant from the time of his arrest until the confession was made testified that he was not whipped, beaten, burned, or in any manner mistreated, by them, or by anyone else, in their presence.

The County Attorney of Henderson County, to whom the confession was made, and who reduced same to writing, testified that it was freely and voluntarily made, after the statutory warning had been given; that appellant showed no signs of having been illtreated in any manner; and that, after the confession was written, appellant read it over before signing it.

The witness Pennell, a laundryman at Athens, who happened to be making a delivery of laundry at the time the confession was made, said that he was called in to witness the same; that, after doing so, he asked appellant to remove his clothing in order that he might verify the statement in the confession that it was free and voluntary; that the appellant did remove his clothing; and that he examined his body "from the bottom of his feet to the top of his head. I didn't see anything wrong with him. Yes sir, I looked at his shoulders. No sir, I didn't see any whelps or knots on his head, I saw no marks on him."

The witness Ard, who was Sheriff of Titus County at the time of the murder, testified that he saw appellant in jail at Gilmer after the confession had been made and "I saw some marks on his neck and shoulder and arm that appeared to be cigarette stub burns. Yes sir, they were fresh. There were several of them on his body."

There was testimony which raised the issue that the officers moved the appellant from place to place and jail to jail to prevent his counsel from knowing his whereabouts and to prevent his release from custody by writ of habeas corpus.

The right of the State to use in evidence, as such, a confession of the accused, has, at all times, been limited and controlled by statute (Arts. 726 and 727, C. C. P.).

This court, as reflected in its decisions touching the subject of confessions, has, throughout the years, endeavored to give effect to the mandate of the statutes, in the light of the facts of each case; and, as a consequence thereof, there appear three cardinal rules governing the admission in evidence of a confession: (1) A confession, to be admissible, must have been made in accordance with the statutes mentioned; (2) Where facts touching such compliance are controverted or are at issue, such issue of facts should be submitted to the jury for determination, along with the trial of the case, under appropriate instructions that the confession be disregarded unless made in accordance with the statutes; (3) Where the facts show that the confession was not freely and voluntarily made, then same is inadmissible as a matter of law.

The decisions of this court attesting these rules are legion, We call attention to a few of the more recent cases: Blackshear v. State, 95 S. W. (2d) 960, 130 Tex. Cr. R. 557; Abston v.

State, 102 S. W. (2d) 428, 132 Tex. Cr. R. 130; and Sigler v. State, 139 S. W. (2d) 277, 139 Tex. Cr. R. 167.

No person ought to be convicted of crime in this State upon a confession forced or extorted in any manner from him. This court has endeavored, at all times, to prevent such an occurrence. Much has been said, and more might be said, supporting the doctrine; but, we forego the opportunity to again do so, contenting ourselves here with a reference to what we said in the foregoing cases.

The question for our determination here presented, then, is: Do the facts of this case show the confession to have been freely and voluntarily made, under the applicable statutes of this State?

Outstanding in these facts is the mode, manner and method by which appellant was conveyed from one place and jail to another, the admitted purpose on the part of the officers, at least partially, being "to get a statement from the negro in talking to him alone or in connection with others who possibly knew something about the crime."

Also, as admitted by another of the officers: "We just talked to him to get that statement. Yes sir, we just sweet talked him out of it."

The confession was finally obtained, as one officer said: "We talked that confession out of him. It took us twenty or thirty minutes to get that confession."

We give effect to the good faith and intent of the officers in moving appellant out of Titus County in order to secure his safety. Yet we cannot subscribe to the idea that it was necessary to carry him 110 miles, to Athens, Texas, for that purpose. That such was not the reason appellant was carried to Athens is demonstrated by the fact that he was kept there only twenty or thirty minutes, and was carried back to Tyler, immediately after he had made the confession. The conclusion is inescapable that he was carried to Athens as a part of the plan to "get a statement from the negro," and which had failed up to that time.

Credence is also given to the fact that, before being carried to Athens, the appellant had repeatedly asserted his innocence

but had, nevertheless, offered to make a statement connecting himself with the crime, which, under such circumstances, was refused by the County Attorney of Titus County.

By setting out these details of the facts, we by no means make them exclusive, but have considered the facts as a whole.

Our conclusion is, and we so hold, that, under the facts presented, the confession was not freely and voluntarily made.

More than thirty years ago, Judge Davidson, speaking for this court in Robertson v. State, 195 S. W. 602, 81 Tex. Cr. R. 378, said: " A voluntary confession is just what it says and ought to be voluntarily given, and not forced or extorted in any manner, even by overpersuasion or promise or threats." What was there said is just as true today as it was the day it was said.

The conclusion here reached is that the trial court erred in admitting the confession in evidence.

While the question here presented has been treated and the conclusion reached under the statutes and decisions of this court, the reversal of the case is in keeping with the recent decision of the Supreme Court of the United States in White v. State of Texas, 310 U. S. 530, 60 S. Ct. 1032, 84 L. Ed. 1342, 139 Tex. Cr. R. 660, 128 S. W. (2d) 51.

For the error discussed, the judgment is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON STATE'S MOTION FOR REHEARING.

GRAVES, Judge.

The State has filed a vigorous motion for a rehearing herein, and lays down the proposition that in our original opinion we have usurped the province of the jury in that where there is a controverted issue of fact and substantial evidence is presented upon both sides of such issue under appropriate in-

structions of the trial court, unless it is clear that an erroneous conclusion has been reached by the jury, this court will not disturb their finding on such issue.

In this case appellant testifies to a long and varied list of mistreatments from the time of his arrest until his execution of a written statement in which he implicated himself in the unlawful death of Mr. Brown, the deceased. He oftentimes places himself in the presence of others than those whom he claims were mistreating him, and is also under examination as to his body and the signs of such mistreatment thereon by persons other than those from whom he claims to have received the mistreatment. In every such instance, save one, appellant's statements relative to his beatings, his burns and his bruises therefrom are not borne out by the testimony of the witnesses. The Sheriff of Titus County does bear out his statement relative to there being certain scars on the back of appellant's neck and body which had the appearance of burns, although the same were healed over less than a week after his arrest on this charge, at which time they were seen by such sheriff, who was in company with appellant's employer, who was also appellant's attorney at such time, but who on account of sickness did not appear at this trial, and while appellant was confined in the jail of a neighboring county.

It appears that the appellant was the house servant of an attorney who was active in the defense of appellant until stricken with sickness, and although too ill to appear at this trial, nevertheless such attorney testified herein by deposition, and was shown to have been present when the Sheriff of Titus County testified that he saw the scars of what he took to be burns on the appellant's neck and back, and the depositions of such attorney made no mention of such scars, nor any signs of mistreatment. At every point where appellant testified he was mistreated, the State presented witnesses who contradicted each statement made relative to such mistreatment. The two State patrolmen who took appellant to the jail at Athens where the statement was first made, although charged by appellant with varied mistreatments and cruelties, denied each and every one of them, and other persons who saw appellant's body at such time state unequivocally that there were no bruises nor burns thereon, and that he suffered no mistreatment at such time in their presence. Eventually appellant again made an oral statement in the presence of the newly elected district attorney of

that district, and claimed in his testimony that he denied the truthfulness of the statement, and told the district attorney that he had been beaten nearly to death in order to extort such confession from him. This district attorney was suffering an attack of influenza, and was not participating in the trial of the case, but at the conclusion of the case he arrived at the court house where the trial was in progress and testified, among other things, as follows:

"I was not personally acquainted with William Ward at that time, and when we got into the jail house there Mr. Rolston County Attorney of Titus County at that time, was with me and possibly he may have told the sheriff our business there, that we wanted to see William Ward and talk to him, but anyhow as a result of whatever preliminaries may have been we went into the presence of William Ward there in the jail house and I introduced myself to William and told him that I was the newly elected District Attorney of this district, and was the man who would ultimately have to ask that the jury put him to death, if he was tried, and I said William this statement here appears to be a mighty bad thing and I want to know whether or not you made this statement freely and voluntarily, and whether or not it speaks the truth, and he said yes sir it is true. I then asked him whether or not the confession had been voluntarily made and whether or not he had been mistreated in any manner to extort the confession from him. He said that he made the confession freely and voluntarily and that he had not been mistreated nor abused by the officers; later on sometime there we asked William to take off all his clothes, and just about or prior to that time he told me that, he said Mr. McCasland I was struck one time and I said William where were you struck and he said I was struck there and he just put his hand up indicating somewhere about the head or face, and I said does it show where he hit you and he said No sir, somewhere along up there, and I asked him who hit him and where and why, and he said he didn't know who hit him or exactly when it occurred nor what they hit him with except that he thought it was a belt, and I asked him if that was all the striking or any mistreatment that he had whatsoever prior to the time he made a confession and he said that was all. I think Mr. Smith was present, or somewhere there near by, and Mr. Hugh Cross when he told me that. We then asked him to remove his clothes that his body might be inspected. Mr. Cross and Mr. Smith then examined and looked at his body then at the same time with me, they were standing

there present and he stripped off there in front of us in the jail. We had him turn around so his whole body could be seen. I couldn't tell all the details there, but I know they were there and looked at his body, but how closely they looked I couldn't say, but they were there and looked at him for the purpose of seeing if he had any evidence of violence upon his person. Yes Sir, I did view the negro boy's body myself. There was no evidence of violence or mistreatment whatever upon the body of William Ward, not a one. There was not a single knot or whelp on his head or face when I examined him. No, I don't recall just who all was present there."

In contravention of appellant's statement relative to his alleged mistreatment the State endeavored to refute same by the testimony of the district attorney, the Sheriff of Henderson County, Mr. Pennell, the two highway patrolmen, a barber, Urban Smith, Hugh Cross, a newspaper man, and Morris Rolston the county attorney of Titus County. The testimony of these eight witnesses, if believed by the jury, refuted every statement made by the appellant relative to his claimed mistreatment, and we think such statements raised an issue of fact that the jury should not only have been allowed to pass upon, but also that their verdict thereon should not be disturbed by this appellate court.

There was also a question raised by appellant's attorneys in their able defense of him, that appellant was removed from jail to jail in order to forestall the issuance of a writ of habeas corpus in his behalf during the progress of the investigation relative to the death of Mr. Brown. There is testimony in the facts presented to us that during the investigation of this matter appellant was taken by his then attorney and employer out of the office of the county attorney prior to his questioning therein, and before any testimony of any material value had been uncovered and he was not returned to undergo his examination. Again it is further shown by the testimony of the Sheriff of Titus County that the same attorney previously on the same day, finding appellant in company with such sheriff at the jail steps, took the appellant away and said he would question him and if he had done anything the appellant would tell such attorney, the appellant being relieved of further questioning previous to the filing of any charges, and the attorney failed to bring the appellant back to undergo such questioning. It was therefore claimed that because of the fact that appellant, upon his arrest, was first taken to the jail at Pittsburg,

Camp County, then to the jail in Smith County, then to the jail at Athens, Henderson County, then back to the jail in Smith County, and finally to the jail at Gilmer, in Upshur County, that such movements from jail to jail was evidence of the fact that not only was the confession not a voluntary one, but that such movements evidence the fact that they were made for the purpose of preventing the issuance of a writ of habeas corpus upon behalf of appellant in order to inquire into the reasons for his arrest and detention.

There was testimony from the officers relative to the safety and security of the jail at Mt. Pleasant and the surrounding jails, and also testimony from citizens as well as officers relative to a feeling of indignation caused by the death of Mr. Brown, who seemed to have been rather popular in the community in which he resided, and it is shown by a fair array of witnesses there was some talk among such citizens about using violence against the person accused of having killed Mr. Brown, and there was testimony from the peace officers that such movements were for the purpose of the protection of appellant from such contemplated unlawful violence. It is also worthy of note that appellant was kept in the jail at Gilmer for some weeks; in fact until his trial, and no effort was made to sue out a writ of habeas corpus.

Under the circumstances above detailed the careful trial court gave in charge to the jury, concerning the statement of appellant and their use thereof, the following:

"You are further instructed that a confession of a defendant in order to be admissible in evidence against him, must be shown by the evidence beyond a reasonable doubt to have been freely and voluntarily made, without compulsion or persuasion, and in regard to the alleged confession of the defendant offered in evidence by the State and permitted to go to the jury, you are instructed that before you can consider the same as any evidence against the defendant, the State must show, and you must believe beyond a reasonable doubt, that the defendant was warned by the officer taking the same: (1) That he, the defendant, did not have to make any statement at all; (2) That any statement made by him, the defendant, may be used in evidence against him on a trial for the offense concerning which it was made. So in this case, if you believe from the evidence or have a reasonable doubt thereof, that the officer taking such confession, did not warn the defendant, that he did

not have to make any statement at all, and did not warn him, that any statement he might make may be used as evidence against him, on a trial for the offense concerning which it was made, or if you believe from the evidence or have a reasonable doubt thereof, that such a confession was not freely and voluntarily made or if you believe or have a reasonable doubt thereof that the same was induced by duress, threats, coercion, fear, or by persuasion, or personal violence, or if you believe from the evidence, or have a reasonable doubt that the defendant William Ward was removed by a peace officer, or officer, from Titus County, Texas, or from jail to jail for the purpose of denying the defendant William Ward the benefit, use or right of the writ of habeas corpus, or in order to deny the defendant William Ward the right to advise the consult with his lawyer, (or if you believe from the evidence, or have a reasonable doubt thereof, that there were events, or series of events, which made the defendant fear for his safety or tend to weaken his will power,) and which events were connected with the securing of the confession, then you will wholly disregard such confession and not consider it for any purpose whatever, and draw no inference nor conclusions therefrom."

Under this instruction and the contradictory statement of the appellant and his witnesses, and the State's witnesses, the jury were allowed and instructed to make their choice as their judgment and their oaths dictated, and evidently they were unable to believe the testimony of the appellant, arrayed as he was against the many State's witnesses to the contrary.

It is a well-settled proposition of law that where there is such a controversy over any material matter of fact in the trial of a law suit, a jury being present, such conflict is properly submitted to the jury for its determination, and their finding thereon will not be disturbed by this appellate court. They had the witnesses before them, they observed their demeanor, their countenances, the glance of the eye, the involuntary exclamation, their eagerness or reluctance, the question as well as the answer, all of which privileges being denied to the appellate court, which is relegated only to the bare page with the typewritten statement of the substance in a narrative form of the testimony. The demeanor oftentimes gives the lie to what is said, and actions sometimes speak more plainly than words.

In the case of Blake v. State, 7 S. W. (2d) 579, Presiding Judge Morrow said:

"T. H. Walters was called by the appellant and testified that he, in company with Mr. Hamilton, brought the appellant from Plainview to Tulia before the confession was made. The said witness said that he told the appellant that he was to be taken to Tulia; that he might as well make up his mind to make a statement; that he said to him:

" 'The attitude you are taking in this, you are trying to beat it. You are fixing for a mob to get you, and under present conditions there is but little difference it makes to me about it.' * * *

"If there was evidence * * * of sufficient cogency to make the validity of the confession questionable, it was still a question for the jury's decision."

On motion for rehearing Judge Lattimore said:

"The question of the conformity to the rules regarding confessions is primarily for the trial judge, but, when he admitted said confession, and the question of fact as to the voluntary character of such confession and its freedom from improper influence arose, the court properly submitted that issue to the jury."

In the case of Wheatley v. State, 34 S. W. (2d) 876, Judge Hawkins said:

"By his action in overruling the motion to withdraw the confession, we must assume that the court in the first instance solved the question against appellant's contention upon the disputed issue, otherwise, he would have withdrawn the confession, but, realizing that it raised an issue of fact, he also submitted it to the jury for their consideration."

In the case of Tance v. State, 93 S. W. (2d) 431, Judge Christian said:

"Appellant introduced testimony tending to show that he had been whipped by the officers before making a confession. Testifying for the State, said officers denied that appellant had been whipped or mistreated in any way. In short, their testimony was to the effect that the confession was voluntarily made. In this situation, the trial court properly submitted the issue to the jury. Appellant's objection to the introduction of the confession was properly overruled."

In the case of Garza v. State, 136 S. W. (2d) 861, Judge Krueger said:

"On the trial, he repudiated his confession and testified that the statements contained in his confession were not true, and that he made them because the officers whipped him and he was afraid not to admit that he was the person who set fire to the cars. The officers testified that there was no mistreatment of the appellant by them. The question of whether or not the confession was freely and voluntarily made was submitted by an appropriate instruction to the jury for their determination."

In cases such as the one at bar we would do violence to such a multitude of cases consistently threading through the decisions of this court and through the history of the jurisprudence of the English speaking people, were we to arrogate to ourselves the power to pass upon controverted questions of fact that have borne the scrutiny of a jury and their decision, well knowing the sanctity of such matters, and would place this court in the position of an usurpation of a power that has been held inviolate as a jury province since the establishment of this Republic and its adoption of the common law of the mother country, and the establishment of the right of a trial by jury by means of the privileges wrung from King John in the twelfth century as evidenced by the Magna Charta.

No matter what our personal belief might be, we do not feel that we have, nor do we usurp the power to set aside the finding of this jury in the case at bar. Surely we have the right to infer, and it is our duty to believe that the trial jury honestly and conscientiously followed the liberal instruction given to them by the trial court relative to the use of this purported confession, and thus believing we are convinced that in our views expressed in the original opinion we were in error. So believing, the State's motion for a rehearing is granted, the opinion reversing this cause is set aside, and the judgment is now affirmed.

### APPELLANT'S MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant has presented a motion for rehearing upon our opinion of affirmance delivered November 12, 1941. The State has filed a reply to said motion and appellant in turn has filed an answer to the State's reply.

The controversy pro and con of the State and appellant is clearly understood, and the responsibility resting upon the court is fully realized.

It may be stated bluntly that no conviction could be sustained in the present case without the confession of appellant. Being fully conscious of such fact we have again patiently and painstakingly re-examined the evidence upon which the use or rejection of such confession turns. The result of the evidence upon that issue, we think, is fairly and sufficiently set out in our opinion of affirmance. We are unable to see just how the trial court could in view of the evidence have handled the matter otherwise than he did by submitting the issue to the jury, without ignoring our decisions upon the question. See 18 Tex. Jur., p. 188, Sec. 103 Branch's Ann. Tex. P. C., p. 41, Sec. 66, and authorities cited under the text in each. See also Wharton's Cr. Ev., Vol. 2, 10th Ed., p. 1423, and notes thereunder showing cases from eighteen states where the same rule is applied as prevails in this state.

It is impractical to undertake to state here the evidence in detail bearing upon the issue under consideration. It would be useless and without profit to write further, as our conclusions would be only repetition of what has already been said in our opinion of affirmance.

Appellant's motion for rehearing is overruled.

BEAUCHAMP, Judge (dissenting).

The nature of the facts of this case and the question of law presented have called for the earnest efforts of each member of this court in a most unusual way. I fully realize the close question under consideration and am impressed with the far-reaching effect of the decision on the subject which has been discussed by Judge Davidson in the original opinion and by Judge Graves on the motion for rehearing. Both opinions clearly, fairly and accurately state the facts considered by each and, yet, they have come to an opposite conclusion, the first reversing the case and the second granting motion for rehearing and affirming it. I am of the opinion that the conclusion reached in the original opinion is correct.

I take no issue with the law announced on the facts stated in Judge Graves' opinion. So far as there is an issue of fact

this must be determined by a jury, even though it results in them passing upon a question of admissibility of testimony. I know of no other way under our present law to handle such matters. Judge Davidson reached his conclusion upon undisputed facts. Judge Graves reached his upon disputed issues, based on the jury's verdict in the case which concluded them against appellant. It is my view that the undisputed issues are not necessary to the question, as the case should turn on the State's evidence. I accept as true every statement made by the officers as it was found by the jury. Every circumstance of the case sustains them, as does the reputation which these men bear as officers, which is also reflected by the record. I cannot but commend them for the manner in which they handled the prisoner in their charge without the abuse too frequently heaped upon a poor unfortunate while incarcerated. Commendable as it may be to "sweet talk" a suspect out of a confession or to do it otherwise, as revealed by the Sheriff of Henderson County, instead of by torture as is frequently reported, when the influence applied results in "getting" a confession, it is not a voluntary one. The two terms are irreconcilably in conflict. What influence was used, what was said in the "sweet talk" on the highway, or the thirty minutes in a strange courthouse, is not revealed by the record. The jury would have been in better position to perform its duty if the State had been required to assume the burden of giving the facts instead of the conclusions of the witnesses. Where there is influence of any nature sufficient to operate on the particular individual and it does produce the confession, it is not voluntary. When this court holds otherwise, it has reached a conclusion contrary to that announced by the Supreme Court of the United States in construing the Fourteenth Amendment in relation to criminal cases in the State courts. (Chambers v. Florida, 309 U. S. 227; White v. Texas, 310 U. S. 530).

It is not a matter of whether or not appellant falsified in his charges against the officers. In all probability he did. In a strenuous effort to free himself it would be natural for one in his place to do so. I can consider his acts without believing his story. He was not on trial for perjury. Neither is the question controlled by the purpose the officers had in mind when they carried him from jail to jail. In doing this they merely laid the scene for the controversy and furnished circumstances which may be considered in determining the question of the voluntary nature of the confession. The circumstances are

potent because it is observed they sought no further place of safety after they "talked that confession out of him." Places from which he had been removed at once became safe places and in a few minutes he was returned to Tyler, later to Gilmer and then to Mr. Pleasant. These facts were properly presented to the jury and they have passed upon them in connection with the disputed issues. We also consider them in connection with the officers' testimony referred to in the original opinion, not as a matter of law to arbitrarily determine the nature of the confession, but to properly understand the influence upon the accused which produced it.

The trial court properly presented what he believed to be the controlling issue as a question of fact for the jury to decide. They did so and he entered judgment accordingly, but it is the duty of this court, and each of us has endeavored, to reach a conclusion in a manner that would direct not only the proper trial of this case, but of many more similarly situated, and also the conduct of officers charged with the responsibility of enforcing the law. I regret that I cannot take the same view, but each of us has a solemn duty to express himself according to our several convictions. This I do in the belief that under the undisputed facts reviewed in the original opinion we should hold the written confession inadmissible. So believing, I respectfully dissent from the majority opinion.

ORDER.

HAWKINS, Presiding Judge.

The judgment of conviction was affirmed by the Court of Criminal Appeals of Texas on the 12th day of November, 1941, and appellant's motion for rehearing was overruled February 18, 1942.

Appellant made application to the Supreme Court of the United States for writ of certiorari to review the action of this court. The writ was granted and on June 1, 1942, the Supreme Court of the United States reversed the judgment of the Court of Criminal Appeals of Texas and remanded said cause for further proceedings not inconsistent with said order of the Supreme Court of the United States.

Therefore, in compliance with said order this cause is remanded to the trial court for further proceedings therein as

may be consistent with the order and opinion of the Supreme Court of the United States.

Accompanying this order and made a part thereof is a certified copy of the mandate from the Supreme Court of the United States now on file as a part of the record in this cause.

This the 7th day of October, A. D. 1942.