## WHITE *v.* TEXAS.

No. 87. Argued May 20, 1940.—Decided May 27, 1940.

*Mr. F. S. K. Whittaker,* with whom *Mr. Carter Wesley* was on the brief, for petitioner.

*Messrs. Lloyd Davidson* and *William J. Fanning,* Assistant Attorney General of Texas, with whom *Messrs. Gerald C. Mann,* Attorney General, *George W. Barcus,* Assistant Attorney General, and *W. C. McClain* were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner was convicted of rape and sentenced to death in the District Court of Montgomery County, Texas. The State's appellate criminal court of last resort affirmed and denied rehearing.[1] We declined to grant certiorari to review the state court's action, 308 U. S. 608. February 29, 1940, petitioner sought rehearing of his petition for certiorari, alleging that his conviction and sentence resulted from proceedings in which the State had utilized an alleged confession in violation of the Due Process Clause of the Fourteenth Amendment. March 25, 1940, we granted certiorari, and reversed the judgment of the state court,

---

[1] 139 Tex. Crim. Rep. —; 128 S. W. 2d 51. A prior conviction was reversed. 135 Tex. Crim. Rep. 210; 117 S. W. 2d 450.

309 U. S. 631, upon authority of *Chambers* v. *Florida,* 309
U. S. 227, and *Canty* v. *Alabama,* 309 U. S. 629. The case
is before us now on the State's petition for rehearing.[2]

From the first offer of the alleged confession in evidence
at the trial, petitioner has challenged the State's right
to utilize it, consistently with rights guaranteed him by
the Federal Constitution.[3] In affirming the conviction
and sentence of death, the court below necessarily
determined that use of the confession did not constitute
a denial of that due process which the Fourteenth Amend-
ment guarantees.

The State suggests that there is evidence that petitioner
denied ever having made or signed the confession which
purported to be signed by his mark. Therefore, it insists

[2] Petitioner's original petition for certiorari was denied November
13, 1939, 308 U. S. 608. On February 29, 1940, after our decision
in the *Chambers* case, petitioner filed a petition for rehearing of
his original petition, assigning the additional ground that his con-
viction was attributable to the use by the State of a confession ob-
tained by coercion and intimidation. March 2, 1940, the Attorney
General of Texas was notified of the pendency of the petition for
rehearing and he has informed the Clerk of this Court that he notified
the State's Appellate Criminal Attorney. Information of pendency
of the petition for rehearing of the petition for certiorari was also
communicated to the Montgomery County District Court Clerk, the
District Attorney, the Governor and the State Board of Pardons
and Paroles. The State's petition for rehearing of our judgment of
March 25, 1940, reversing the state court's judgment, alleged that
the State had not received adequate notice and sought further oppor-
tunity to present the State's views. We therefore heard oral argu-
ments upon the State's petition for rehearing.

[3] In addition to alleging that the confession relied on by the State
was coerced and involuntary, both petitioner's amended motion for
a new trial and his bill of exceptions to the court below set out that
he "was not permitted to talk to an attorney to advise him but was
kept incommunicado, was not permitted to use a telephone, was kept
in the woods by Rangers a great portion of the time and was denied
every right that even this defendant is entitled to under the Consti-
tution of Texas and the Constitution of the United States."

that petitioner is barred from urging that the prosecution's use of the confession could have deprived him of due process at his trial. But regardless of petitioner's testimony on this question, the State insisted and offered testimony to establish that the confession was signed by him, and upon this evidence the confession was submitted to the jury for the purpose of obtaining his conviction. Since, therefore, the confession was presented by the State to the jury as that of petitioner, we must determine whether the record shows that, if signed at all, the confession was obtained and used in such manner that petitioner's trial fell short of that procedural due process guaranteed by the Constitution.

Petitioner is an illiterate farmhand who was engaged, at the time of his arrest, upon a plantation about ten miles from Livingston, Texas. On the day following the crime with which he has been charged, he was called from the field in which he was picking cotton and was taken to the house of the brother-in-law of the prosecutrix, the victim of the crime, where fifteen or sixteen negroes of the vicinity were at the time in custody without warrants or the filing of charges. Taken to the county court house, and thence to the Polk County jail, petitioner was kept there six or seven days. According to his testimony, armed Texas Rangers on several successive nights took him handcuffed from the jail "up in the woods somewhere," whipped him, asked him each time about a confession and warned him not to speak to any one about the nightly trips to the woods. During the period of his arrest up to and including the signing of the alleged confession, petitioner had no lawyer, no charges were filed against him and he was out of touch with friends or relatives.

There were denials that petitioner was ever physically mistreated or abused. But the Rangers and a local peace officer, identified by petitioner as the officers who took

him on the night trips to the woods and there whipped him, did not specifically deny that he was taken out of jail, at night, and interrogated in the woods. This local peace officer wasn't sure "how many times" the prisoner was removed from jail, and one Ranger re-stated his testimony given at the first trial that he "took him out so many times" the exact number could not be recalled. The prisoner was taken out of jail, driven "out on the road" and then "out off of the road," as this Ranger testified, in order that the officers could talk to him and because the jail was crowded. In jail, the Sheriff put petitioner by himself and "kept watching him and talking to him."

Before carrying petitioner to Beaumont, where the alleged confession was taken, the Sheriff talked about an hour and a half with him. The Rangers who had been taking petitioner to the woods at night knew the county attorney was going to Beaumont to get a statement; they, too, went there and were in and out of the eighth floor room of the jail in Beaumont, with the elevator locked, where petitioner was interrogated from approximately 11: 00 P. M. to 3: 00 or 3: 30 A. M. The alleged confession was reduced to writing after 2 A. M. Immediately before it was taken down, the prisoner was repeatedly asked by the private prosecutor whether he was ready to confess. Petitioner then began to cry, and the typing of the confession, upon which the State's case substantially rested, was completed by the county attorney about daylight. Two citizens of Beaumont signed it as witnesses.

"Due process of law, preserved for all by our Constitution, commands that no such practice as that disclosed by this record shall send any accused to his death." [4]

The State's petition for rehearing is

*Denied.*

---

[4] *Chambers* v. *Florida,* 309 U. S. 227, 241; *Canty* v. *Alabama,* 309 U. S. 629.