## PADDY v. UNITED STATES.

### No. 10454.

Circuit Court of Appeals, Ninth Circuit.

June 17, 1944.

Rehearing Denied July 13, 1944.

Howard D. Stabler and Frederick Paul, both of Juneau, Alaska, for appellant.

Wm. H. Holzheimer, U. S. Atty., of Juneau, Alaska, and Robert McMillan, Asst. U. S. Atty., of San Francisco, Cal., for appellee.

Before GARRECHT, DENMAN, and MATHEWS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the District Court for the Territory of Alaska. The appellant, William James Paddy, was indicted under a charge of murder in the first degree in the killing, in Douglas, Alaska, on August 13, 1942, of one Toni Simin by shooting him with a revolver. Following a trial with jury, a verdict was returned on February 5, 1943, finding him guilty as charged. A motion for a new trial was denied and, on March 11, 1943, the court entered judgment sentencing the defendant to be hanged at Juneau, Alaska, on May 21, 1943.

On May 6, 1943, appellant filed a petition for appeal with the district court, which petition was denied on the ground that notice of appeal was not filed within five days after entry of judgment pursuant to Rule 3 of Criminal Procedure After Plea of Guilty, Verdict or Finding of Guilt. 18 U. S.C.A. following section 688.

The same day, appellant filed a motion for arrest of judgment and sentence and for a new trial based on the ground of newly-discovered evidence. Following argument, the court denied the motion on May 8, 1943. On May 11, 1943, defendant filed and served notice of appeal from the judgment and from the denial of motion for new trial.

Appellee has raised the issue of this court's jurisdiction over the appeal from the judgment on the ground that it was taken out of time, contending that Rule 3 requires notice of appeal in capital cases to be filed within five days after entry of judgment of conviction.

The rules in question provide

"Rule 3. Appeals

"An appeal shall be taken within five (5) days after entry of judgment of con-

MATHEWS, Circuit Judge, dissenting.

viction, except that where a motion for a new trial has been made within the time specified in subdivision (2) of Rule 2, the appeal may be taken within five (5) days after entry of the order denying the motion."

"Rule 2. Motions

\* \* \* \* \*

"(2) Save as provided in subdivision (3) of this Rule, motions in arrest of judgment, or for a new trial, shall be made within three (3) days after verdict or finding of guilt.

"(3) Except in capital cases a motion for a new trial solely upon the ground of newly-discovered evidence may be made within sixty (60) days after final judgment, without regard to the expiration of the term at which judgment was rendered, unless an appeal has been taken and in that event the trial court may entertain the motion only on remand of the case by the appellate court for that purpose, and such remand may be made at any time before final judgment. In capital cases the motion may be made at any time before execution of the judgment."

The government's contention necessarily is that the only exception to the five day limitation of time within which an appeal may be taken is where a motion for a new trial or in arrest of judgment has been made within three days after the verdict. This means that the phrase in subdivision 2 of Rule 2, "Save as provided in subdivision (3) of this Rule," does not incorporate into subdivision 2 of the specification of the sixty day period for motion for a new trial on the ground of newly-discovered evidence, nor, for capital cases, the specification of a time continuing up to immediately before the execution of judgment.

We are unable to accept this narrow interpretation of the phrase "time specified in subdivision (2) of Rule 2." We regard it a rational treatment of subdivision 2 of Rule 2 as including the matter in subdivision 3 and to read, so far as here pertinent,

"(2) Save [in capital cases (where) the motion for a new trial on newly-discovered evidence may be made at any time before the execution of the judgment] motions in arrest of judgment, or for a new trial, shall be made within three (3) days after verdict or finding of guilt."

Since this is a rational interpretation of the rule and more favorable to the defendant, we are required to accept it. Suppose, in a capital case, the trial court refused to consider after-discovered evidence of the confession of another person that he had committed the murder and denied the motion for a new trial. Under the government's contention, this abuse of discretion could not be reviewed on any appeal from the judgment, though if the motion had been made within three days and the court had refused to consider the evidence and denied the motion, the denial would be reviewed on such an appeal. Harrison v. United States, 2 Cir., 7 F.2d 259, 262. We cannot believe that this was the intent of the Supreme Court in specifically providing for the motion in capital cases.

We hold that in a capital case, if a motion for a new trial upon newly-discovered evidence be made at any time prior to the execution of the convicted man, and the motion be denied, an appeal from the judgment of conviction may be taken within five days from the date of denial. If the holding of the Fifth Circuit in Fewox v. United States, 77 F.2d 699, 700, be to the contrary, we disagree.

In this case the motion filed was based upon matters stated in the affidavit of appellant. Appellee contends that the motion for a new trial, purportedly on the ground of newly-discovered evidence, stated in the appellant's accompanying affidavit, is no motion at all because the facts narrated concerning the obtaining of the confession and admissions from the affiant must have been within his knowledge at the trial. We agree that the mere claim in appellant's moving papers that the motion is based upon after-discovered evidence does not make it such a motion if it appear upon the face of the documents that all the evidence was known to appellant before the trial was concluded.

However, in addition to the averments concerning the obtaining of the confession and admissions of which appellant had knowledge are those concerning the obtaining of certain physical evidence by an alleged unconstitutional search and seizure: namely, that the search of appellant's room, from which were taken bottles of whiskey shown to have been taken from the murdered man's store after the shooting and a holster into which fitted the re-

volver with which appellant shot Simin, was participated in by an officer of the Federal Bureau of Investigation as well as by the local police—no search warrant having been issued to any one of them.

■■ The bill of exceptions shows objections to the introduction of the evidence regarding the revolver holster and the bottles of whiskey and an argument based upon the distinction between such a search and seizure by local police and by federal officers. With the validity of such a distinction we are not concerned. The averments of the motion's affidavit tender a more than colorable legal contention for the trial judge's decision. The right to an appeal from the judgment after denial of the motion for a new trial is not dependent upon the success of that motion. The time fixed for appeal runs from the denial of the motion, even though the appellant is not entitled to a favorable decision of the motion's merits. We hold that the notice of appeal of May 11, 1943, invoked the jurisdiction of this court.[1]

It thus appears that in considering and denying the motion for a new trial the district court was acting within its powers when the claim was made to it that the confession and admissions of the premeditated killing had been made to federal officers while appellant was in their custody and before appellant was taken before a committing magistrate. An officer of the Federal Bureau of Investigation had testified at the trial that while in the custody of the officers of the Federal Bureau of Investigation appellant was interrogated by them on two occasions for from two to three hours, once three days before, in the afternoon, and once on the morning of his arraignment. Appellant claims that under the decisions of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829, the district court was required to grant appellant a new trial and that there must be a reversal here.

Appellee claims that the admissions and confession, to which no objections or motions to strike were made, were made freely and without coercion after appellant had been fully advised by the federal officers of his right not to make any statements and that they would be used against him, just as appellant stated in the opening words of his confession.[2]

---

[1] It is also suggested that the motion of May 6, 1943, cannot be considered because, though it is upon the ground of newly discovered evidence, it also advises the court that his confession was procured by the officers before his arraignment and that he learned of the decisions of McNabb v. United States and Anderson v. United States only after his sentence and makes this also a ground for a new trial.

The suggested ground for refusal to consider this motion of May 6th, and hence deny any appeal of the condemned man, is that it is not a motion "solely" upon the ground of new evidence as that word is used in Rule 2(3), supra, but upon such evidence and another ground for setting aside the sentence of hanging. Even in a non-capital case we would regard the suggestion as disclosing a mere technical defect which we are required to ignore by 28 U.S.C.A. § 391. That statute requires us to "give judgment after an examination of the entire record before the court" of the motion for a new trial "without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

We construe the use of the word "solely" in the phrase "motion for a new trial solely upon the ground of newly-discovered evidence" as doing no more than to limit the court's jurisdiction to that ground. If other grounds be stated they are mere surplusage, if beyond the court's jurisdiction to entertain. We feel sure that the framers of Rule 2(3) did not intend that the language so should be construed that a condemned man having newly discovered evidence of the confession of the actual murderer should be hanged because in his motion, based upon such a newly discovered confession, he included the ground that his plea of guilty below had been obtained upon a promise by the prosecuting officers that he would be sentenced for simple assault.

[2] "I, William J. Paddy, make the following signed statement to Dwain C. Limprecht and Robert G. Boes, who I know to be Special Agents of the Federal Bureau of Investigation and to Walter G. Hellan, who I know to be a Deputy U. S. Marshal. I have been told that I do not have to make this statement, have been advised of my rights not to make any statement and I know that whatever I say may be used in court against me. No threats or promises were made to me to induce me to give this statement."

On this the evidence shows that the confession's statement relative to appellant's being advised of his rights was not denied by him when he took the stand and admitted he had read the confession and intialled corrections made by him thereon and signed it. Further, under cross-examination by his attorney, appellant claimed other portions of the confession to be incorrect, but not the fact that he had been advised that he need make no statement and that what he said would be used against him.

It also appears that appellant was not for the first time in the hands of arresting officers. He had an extended criminal record. He is a full-blooded Tlingit Indian with ten years of education through two years of high school. He admitted on the stand that he had been tried and convicted and served sentences for at least one felony, a forgery, and for a number of thefts. He must have been fully aware of his right to counsel. He admitted the breaking into and entry of its owner's home and stealing of the pistol with which he killed Simin. His testimony on direct and cross-examination shows him a man of intelligent and active mind.

In waiving his immunity and testifying, appellant was represented by two attorneys, whose competence is shown both by their action at the trial and in the briefs here. Before appellant took the stand a United States Deputy Marshal had testified to statements made by appellant to him and others while in custody and before arraignment. They tended to sustain a verdict of first degree murder. The Supreme Court then had long established that confessions and such admissions of guilt, which were not freely made but procured by any oppressive action, cannot be considered by the jury in any criminal action. Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Canty v. Alabama, 309 U.S. 629, 60 S.Ct. 612, 84 L.Ed. 988; White v. Texas, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342; Lomax v. Texas, 313 U.S. 544, 61 S.Ct. 956, 85 L.Ed. 1511; Vernon v. Alabama, 313 U.S. 547, 61 S.Ct. 1092, 85 L.Ed. 1513; Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166; Ward v. Texas, 316 U.S. 547, 62 S.Ct. 1139, 85 L.Ed. 1663; and see Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568.

Appellant's attorneys made no objection to this testimony of the Deputy Marshal. Not only did they permit the introduction of this testimony as to appellant's statements to the Deputy Marshal, but when appellant's written confession was offered no objection was made save that it was an unnecessary duplication of the Deputy's testimony. The record shows

"Mr. Stabler: I have one objection. The Witness had already testified. This is just a duplication to put it in there, what he has already testified, it unnecessarily exaggerates—one or the other should be excluded.

"The Court: That isn't the witness' testimony. It will be admitted.

"Mr. Stabler: I will take an exception."

Before appellant was called to the witness stand, it had been proved by evidence other than confession or admission that Simin, a storekeeper, had been shot twice, one shot producing a superficial wound in the scalp and the other from behind under the right shoulder blade and through both lungs,—a shot which severed arteries in the lungs causing a bleeding into them. In the space of time between the two shots a listener walked twenty-five yards. There was produced the revolver with which the shooting was done. It was not an automatic pistol in which the recoil of one shot cocked the hammer for the next. For each shot the hammer had to be cocked and the trigger pulled. The weapon is not before us and it does not appear that a continued pulling of the trigger would first raise the hammer to a cocked position and, second, trip the hammer to its fall upon the cap of the cartridge. Appellant was shown to have loitered in the neighborhood. He took the officers to the place where, after the shooting, he had concealed the pistol and also the trench raincoat he was wearing when loitering near Simin's store. The revolver when found had three loaded and two empty shells.

In this situation appellant was called to the stand and testified that he had stolen the revolver and cached it near Simin's store several days before the shooting. That he placed it in his right hand pocket and went to Simin's store to obtain some whiskey. That two whiskey bottles were placed on the counter; that Simin pulled out the drawer of his counter and appellant saw money in it; that he then ordered a Tom Collins bottle, which was on a shelf behind the counter; that when Simin turned to reach for the bottle appellant took the revolver out of his pocket and shot Simin from behind; that Simin "hollered" and appellant shot him again; that after Simin

had fallen behind the counter appellant, instead of going to Simin's aid, opened the drawer and took Simin's money, put the two bottles of whiskey in his pocket and left to go to his room in nearby Juneau, on his way hiding the pistol and a long coat he was wearing and which might identify him. In Juneau, while his victim was slowly dying under the wounds he had inflicted, appellant bathed and shaved and left to spend the stolen money in a dancehall, where he was apprehended while on the floor with a dancing partner.

The above constitutes the succession of events as testified to by the appellant on direct examination by his own attorneys. He claimed that he took the stolen revolver to the store to attempt to "hock" it; that he took it out of his pocket when Simin was facing away from him, to offer it to Simin for that purpose. Instead of offering it on the flat of his hand or with the butt towards Simin, appellant held it in the clasp of his hand with his finger on the trigger. In some unaccountable way, he claimed, his finger accidentally pulled the trigger, hitting Simin and causing him to "holler." This, appellant claimed, excited him and the revolver again accidentally had its trigger pulled and Simin was shot from behind the second time.

It is obvious that in this evidence, volunteered at the trial, showing that though claiming an accidental shooting appellant did not render any aid to Simin, but left him lying on the floor suffering from his wounds, the jury could disbelieve appellant's testimony concerning the intent to "hock" the pistol and its two accidental cockings and pulls upon its trigger and believe beyond a reasonable doubt that appellant, when he saw the money in the drawer, deliberately formed the malicious intent and purpose to kill Simin to obtain his money and proceeded with the premeditated malice so to shoot Simin and leave him lying behind the counter to die while appellant carried off the money.

In the McNabb and Anderson cases, supra, and the more recent case of Ashcraft v. Tennessee, 64 S.Ct. 921, decided by the Supreme Court on May 1, 1944, the conduct of the interrogating officers bears no resemblance to the case before us. In each of those cases there was no evidence apart from the confession upon which a conviction could rest. Here it is unnecessary to sustain the verdict. In those three cases coercion was the main reliance of the defendants for the exclusion of the confessions. Here there was no claim of coercion and no objection at all to the admission of the confession. On the contrary, the confession was admitted by appellant to have been based upon appellant's statements, the only substantial difference between the confession and appellant's testimony being appellant's extraordinary claim that after seeing the money in the drawer the revolver was twice fired accidentally.

■ Since it did not appear at the trial that the confession and admissions were produced prior to the taking of the appellant before the committing magistrate, there was at that time no duty upon the district court to consider their admittance such as is stated in the McNabb case. When that fact was brought to the court's attention the judgment had been rendered, with appellant's voluntary testimony warranting—if not compelling—the inference that he was a cruel and deliberate murderer; and also the absence of any objection by the defendant to the consideration of the confession, with the intention to go on the stand and clear himself by his own testimony, followed by that action, justifying a holding that the statements to the arresting officers were voluntary and any defense against their introduction was waived. In such circumstances we hold that the doctrine of the McNabb case does not require the district court to set aside the judgment and that there was no error in the denial of the motion for a new trial.[3]

■■ The appeal also raises the question whether the district court erred in failing to instruct the jury that there was no evidence to show the deliberation and premeditated malice for and purposefulness necessary for conviction, and that the jury was required to bring in a verdict of a lesser offense. Our summary of the evidence shows that the motion was properly denied. For the same reason we find no error in the following instruction to the jury:

"By 'deliberate and premeditated' as used in the indictment is meant that the idea of killing must have been conceived and intended before the act which produced death;

---

[3] Cf. United States v. Mitchell, 64 S.Ct. 896; Lyons v. Oklahoma, 64 S.Ct. 1208; Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166; Ziang Sung Wan v. United States, 266 U.S. 1, 14, 45 S.Ct. 1, 69 L.Ed. 131.

namely the shooting. * * * The deliberate purpose to kill, and the act in execution thereof, may follow each other as rapidly as successive impulses or thoughts of the mind; it is enough that the purpose and intent to kill precede the act. * * *"

The jury well could find that the appellant, an habitual thief, after seeing the money in the drawer, then with sufficient deliberation could conceive the idea of killing Simin. Malice to be premeditated does not require the meditation of the cloister.

■ It is urged that the evidence concerning the pistol's holster and two bottles of whiskey discovered by the entry of appellant's room without a search warrant was wrongfully admitted and the objection thereto should have been sustained. Assuming, but not deciding, that the evidence should not have been admitted, appellant's later voluntary testimony regarding the pistol and the whiskey made this harmless error.

■ It is also contended that there should be a reversal because of certain alleged conduct of the prosecuting attorney which is claimed to be prejudicial in character. It is not claimed that objection was made to this alleged misconduct and there is no record before us of any of the arguments to the jury. We find no error shown.

■ It is claimed that the district court erred in not defining the term capital punishment as meaning hanging, upon giving the following instruction on the form of one of several verdicts,

"Under the testimony it will be competent for you to return either one of five verdicts:

"The first is—Guilty of murder in the first degree, as charged in the indictment. That verdict will be followed by capital punishment."

No objection was made to this instruction. The term "capital punishment" is one of common parlance. We here find no error.

■ We are asked to consider the propriety of certain other instructions to which no exceptions were taken. We have examined them and hold that such instructions have not prejudiced the appellant.

The judgment is affirmed.

MATHEWS, Circuit Judge (dissenting).

To its requirement that "An appeal shall be taken within five (5) days after entry of judgment of conviction," Rule 3 of the Rules of Criminal Procedure After Plea of Guilty, Verdict or Finding of Guilt, 18 U. S.C.A. following section 688, provides a single exception, namely, "that where a motion for a new trial has been made within the time specified in subdivision (2) of Rule 2,[1] the appeal may be taken within five (5) days after entry of the order denying the motion."

This case is not within the exception; for, although two motions for a new trial were made—one on February 10, 1943, and one on May 6, 1943—neither of them was made within the time specified in subdivision (2) of Rule 2. The appeal was not taken within five days after entry of judgment of conviction. Hence the appeal was not taken in time.[2]

Subdivision (3) of Rule 2, relied on by appellant, applies only to "a motion for a new trial solely upon the ground of newly-discovered evidence." There was no such motion in this case. The motion of May 6, 1943, was not such a motion, but was a motion for a new trial upon the ground of

[1] Subdivisions (2) and (3) of Rule 2 provide:

"(2) Save as provided in subdivision (3) of this Rule, motions in arrest of judgment, or for a new trial, shall be made within three (3) days after verdict or finding of guilt.

"(3) Except in capital cases a motion for a new trial solely upon the ground of newly-discovered evidence may be made within sixty (60) days after final judgment, without regard to the expiration of the term at which judgment was rendered, unless an appeal has been taken and in that event the trial court may entertain the motion only on remand of the case by the appellate court for that purpose, and such remand may be made at any time before final judgment. In capital cases the motion may be made at any time before execution of the judgment."

[2] O'Gwin v. United States, 9 Cir., 90 F.2d 494. See, also, Burr v. United States, 7 Cir., 86 F.2d 502; Decker v. United States, 5 Cir., 97 F.2d 473; United States v. Tousey, 7 Cir., 101 F. 2d 892; Miller v. United States, 5 Cir., 104 F.2d 343; United States v. Infusino, 7 Cir., 131 F.2d 617; Nix v. United States, 5 Cir., 131 F.2d 857.

854

newly-discovered evidence and upon other grounds. How, if at all, it might have affected appellant's right of appeal had it been a motion for a new trial solely upon the ground of newly discovered evidence need not be considered.[3]

Since the appeal was not taken in time, we have no jurisdiction to entertain it[4] and hence should dismiss it.

---

[3] See, however, Fewox v. United States, 5 Cir., 77 F.2d 699.

[4] See cases cited in footnote 2.