THOMAS v. TEETS.

No. 13134.

United States Court of Appeals,
Ninth Circuit.

April 27, 1953.

As Amended on Denial of Rehearing
June 27, 1953.

Mathews, Healy and Bone, Circuit Judges, dissented.

238

A. J. Zirpoli, San Francisco, Cal., for appellant.

Edmund G. Brown, Atty. Gen., State of California, Clarence A. Linn, Asst. Atty. Gen., State of California, Wallace G. Colthurst, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, MATHEWS, STEPHENS, HEALY, BONE, ORR and POPE, Circuit Judges.

DENMAN, Chief Judge.

Thomas appeals from an order denying his application for a writ of habeas corpus without issuing the writ or an order to show cause and the first question before us is whether his application states a ground which, if true, warrants the issuance of the writ or show cause order.

█ Thomas, a negro, is not a lawyer and alleges he has had no prior experience in criminal litigation. His application is written in his longhand. Its language is clear but without the citation of any cases or the professional quality of the flood of applications from expert pleaders of both state and federal penitentiaries. It does not question the fact that he shot and killed Mrs. Ainsworth, a white woman, in a manner which constituted one of the degrees of murder under section 189 of the California Penal Code though he alleges that his pistol was discharged accidentally. Thomas' application being drawn by an inexperienced layman is to be construed to give its allegations effect, though inartificially drawn. Darr v. Burford, 339 U.S. 200, 203, 70 S.Ct. 587, 94 L.Ed. 761; Price v. Johnston, 334 U.S. 266, 292, 68 S.Ct. 1049, 92 L.Ed. 1356.

█ We are required to assume these allegations are true. White v. Ragen, 324 U.S. 760, 763, 65 S.Ct. 978, 89 L.Ed. 1348. So far as they concern the sheriff and Thomas' attorney, it must be remembered they are unproved allegations.

*A. The application alleges a violation of the due process clause of the Fourteenth Amendment.*

Thomas' application for the writ shows he was denied due process of law by the conduct of the state officers who had him in custody and by the conduct of his attorney, an officer of the state court. He was persuaded to give up his right to trial by jury, by the threat of his custodian, the sheriff,[1] that if he sought a jury trial instead of "keeping his mouth shut" and pleading guilty, the sheriff "might let word get around" that he had not so pleaded to the people of a county "all worked up" over a negro killing a white woman and that some of these people "might come and string me up." If Thomas kept "his mouth shut" and so pleaded guilty, the sheriff advised him, it would be to a judge who in the sheriff's eleven years' experience had not imposed the death sentence. His jailor also told him he had better do what the sheriff said. Thomas kept his mouth shut, about the lynching threat.

An attorney appointed by the court also advised him to plead guilty, saying "He knew the Judge real well and he would talk to the Judge and the Judge would sure give me life if I plead guilty and save everybody a lot of trouble and County the expense of a Jury trial." Thomas pled guilty and the judge sentenced him to death.

It was not until after the mandatory appeal on such death sentences had been decided against him that he obtained a copy of the transcript of the proceedings of his trial. From this he then first discovered that the trial judge in chambers, where Thomas was not present but his attorney was, had warned his attorney he would give Thomas gas if he pleaded guilty.[2] Had his

---

1. Cal.Penal Code, § 1286.

2. The transcript of proceedings in this respect appears in the report of the mandatory appeal, 37 Cal.2d 74, 76, 230

P.2d 351. It shows the trial judge said he was "inclined" to give the "extreme penalty" whether Thomas pleaded guilty or not guilty.

attorney not concealed from him the judge's statement, Thomas certainly would have pleaded not guilty and would have had his trial by jury. Such alleged wrongful conduct of the attorney may not be an act of a state officer in violation of the due process clause of the Fourteenth Amendment. However, this allegation if proved is an answer to the possible contention that the act of the sheriff was not the proximate cause of Thomas' plea of guilty because his attorney had advised him before his plea of the judge's intention if he pled guilty.

█ The Warden contends that Thomas could not have been frightened by the threat of the sheriff because "never in the history of California has there been a *threat of lynching* arising from the fact that the object of the mob was of the Negro race. This is common knowledge and an historical fact of which the court must take notice. Code of Civ.Proc.California, § 2102." (Emphasis supplied). The Warden offers no evidence of it. To ascribe to the negro Thomas on the application before us, whose allegations must be regarded as true, the possession of such common knowledge would be cruelly unjust.

Again going outside the record, the Warden seeks to have us not consider the wrong alleged to have been done Thomas by his attorney's concealment from him of the judge's statement in chambers by stating that Thomas' attorney did advise him that the judge was inclined to inflict the death penalty whether he pleaded guilty or not guilty. This, although as stated, is contrary to Thomas' allegation that his attorney concealed from him the judge's intent.

█ The alleged coercive and wrongful conduct of the sheriff in so frightening Thomas brings the case within those of similar wrongdoings by federal and state officers in the course of criminal prosecutions held to deprive those accused of the due process of the Fourteenth and Fifth Amendments, such as Mooney v. Holohan, 294 U.S. 103, 110, 55 S.Ct. 340, 79 L.Ed. 791; White v. Texas, 310 U.S. 530, 532, 60 S.Ct. 1032, 84 L.Ed. 1342; Chambers v. Florida, 309 U.S. 227, 230, 60 S.Ct. 472, 84 L.Ed. 716; Brown v. Mississippi, 297 U.S. 278, 281, 56 S.Ct. 461, 80 L.Ed. 682; cf. Wan v. United States, 266 U.S. 1, 3; Wilson v. United States, 162 U.S. 613, 616, 16 S.Ct. 895, 40 L.Ed. 1090.

It is obvious that if Thomas had been tried by a jury, any one of the twelve opposed to the death sentence could have caused a mistrial or could have persuaded his co-jurors to determine that Thomas should receive life imprisonment, section 190 of the Penal Code providing that "Every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same; * * *."

B. *Thomas exhausted his state remedies though he did not petition for certiorari and have it denied until after he filed his application below.*

█ Since the violation of due process was a matter dehors the record, the supreme court on the mandatory appeal could not give them consideration. Thomas' attorney in his criminal prosecution continued so to represent him from the death sentence to the supreme court's affirmance. It is obvious that if there had been a method of presenting that counsel's concealment of the trial judge's statement, he would not so have disclosed his wrongdoing.

The only remedy under the California law left to Thomas was to seek a writ of habeas corpus from one of the California courts. The supreme court of California has recently held in People v. Adamson, 34 Cal.2d 320, 327, 210 P.2d 13, 16:

"With expansion of the function of habeas corpus in this state, an application for that writ has become the proper remedy to attack collaterally a judgment of conviction which has been obtained in violation of fundamental constitutional rights. Thus, the appropriate writ to secure relief from a judgment of conviction obtained by the use of false testimony known by the prosecution to be false is not *coram nobis* but habeas corpus. * * *"

█ This is followed in People v. Sorenson, 111 Cal.App.2d 404, 244 P.2d 734, 735,

a decision rendered May 28, 1952, by the California District Court of Appeal, First District, holding that coram nobis sought there was not a proper method of collateral attack on "a judgment of conviction which has been obtained in violation of fundamental constitutional rights", but that the proper remedy is by habeas corpus.

■ Thomas chose to apply to the California Supreme Court where his application is identical with his application to the district court below. Since the application alleged a violation of due process which was dehors the record of the state criminal proceeding, the supreme court was required to issue the writ. Cal.Penal Code, § 1476, § 1483. Here again Thomas was denied due process—that of the state. The California Supreme Court did not issue the writ. Without opinion it merely entered a bald order that Thomas' application was denied.

■ Thomas did not seek certiorari on this denial of the writ before he filed his application in the district court below. We do not agree with the Warden's contention that this deprives the district court of jurisdiction to consider it. This is not the "ordinary" case of Darr v. Burford, 339 U.S. 200, 207, 70 S.Ct. 587, 94 L.Ed. 761 and Ex parte Hawk, 321 U.S. 114, 118, 64 S.Ct. 448, 88 L.Ed. 572. Here there exist the special circumstances of Darr v. Burford and 28 U.S.C. § 2254, rendering the "process [of certiorari] ineffective to protect the rights of the prisoner."

Thomas was sentenced to be gassed on August 31, 1951. His plea to the Governor for executive clemency was made on August 6th but not denied until August 20th. On that day he filed his application for the writ with the California Supreme Court which denied it on August 28th. On that day Thomas sought a stay from a Justice of the Supreme Court of the United States which was denied on August 30, 1951. On August 29, 1951, two days before he was to be gassed, he filed his application below, alleging inter alia that he had sought the stay from the Supreme Court Justice.

Since but two days could elapse before his execution, there was not time for this layman to seek for and secure from the Supreme Court in Washington a consideration of a petition for a writ of certiorari. Here the two days before death for the seeking of action upon a petition for certiorari is a "circumstances rendering such process ineffective to protect" his rights under 28 U.S.C. § 2254.

■ Furthermore, we have held contrary to the Warden's contention in Duffy v. Wells, 9 Cir., 201 F.2d 503, 504. There the district court accepted jurisdiction of Wells' application though Wells did not make an application to the California courts for the writ before that to the district court. After the federal application he filed his state application, had the writ denied and then certiorari was denied. We held at page two of our printed opinion "Section 2254 does not deny jurisdiction where the state remedies have not been exhausted. That section provides only that the application shall not be 'granted' unless it appears that the state remedies have been exhausted. Section 2243 provides that 'the court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.' We think that its action in so retaining jurisdiction is what law and justice required. We made a similar retention of jurisdiction in the habeas corpus case of Lee Fong Fook v. Wixon, 9 Cir., 170 F.2d 245."

■ The Supreme Court in Sharpe v. Buchanan, 317 U.S. 238, 63 S.Ct. 245, 87 L.Ed. 238, holds that it is the condition of the habeas corpus proceeding as it is in the appellate court which is determinative. There when Sharp applied for the writ to the federal district court he had not applied to the state courts for habeas corpus and the district court denied the application on that ground. Sharp appealed and the court of appeals affirmed. After certiorari was applied for the Kentucky Court of Appeals finally denied Sharp's application for the writ. The Supreme Court stated 317 U.S. at page 239, 63 S.Ct. at page 246:

"* * * It thus appears that this obstacle to a consideration of the merits of petitioner's application, which the

circuit court of appeals encountered, has now been removed. The judgment is therefore vacated, without costs, and the cause remanded to the circuit court of appeals for such further proceedings as it may deem appropriate."

The district court denied Thomas' petition for a stay of execution. It was stayed by the Chief Judge within an hour of the time fixed for Thomas' gassing. Thomas v. Duffy, 9 Cir., 191 F.2d 360.

During the period of the stay of execution, Thomas, on the suggestion of the Chief Judge, appointed A. J. Zirpoli, an able attorney with a wide experience in criminal cases, who has since represented him. The petition for certiorari to the Supreme Court was filed and denied.

C. *The district court had jurisdiction to consider Thomas' application, though the California Supreme Court denied his application and the Supreme Court denied certiorari.*

 The Warden contends that though the state processes are exhausted, the district court had no power to consider Thomas' application to it because after the denial of certiorari it is an ordinary case without exceptional circumstances. We have held the contrary in Ekberg v. McGee, 9 Cir., 194 F.2d 178,[3] where we construed 28 U.S.C. § 2254 as requiring the consideration of the application, although the Supreme Court has denied certiorari and there are no special circumstances requiring such consideration.

Our holding that the denial of certiorari does not prevent it is supported by Justice Frankfurter's opinion in Agoston v. Pennsylvania, 340 U.S. 844, 71 S.Ct. 9, 95 L.Ed. 619, stating:

"The Court has stated again and again what the denial of a petition for writ of certiorari means and more particularly what it does not mean. Such a denial, it has been repeatedly stated, 'imports no expression of opinion upon the merits of the case'. United States

v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361, and see, e. g., House v. Mayo, 324 U.S. 42, 48, 65 S. Ct. 517, 521, 89 L.Ed. 739; Sunal v. Large, 332 U.S. 174, 181, 67 S.Ct. 1588, 1592, 91 L.Ed. 1982. A denial simply means that as a matter of 'sound judicial discretion' fewer than four members of the Court deemed it desirable to review decision of a lower court. Rule 38, par. 5, 28 U.S.C.A. See Maryland v. Baltimore Radio Show, 338 U.S. 912, 70 S.Ct. 252 [94 L.Ed. 562]. * * *"

So also our decision in Ekberg v. McGee is upheld in Justice Frankfurter's opinion for the majority of the Court in Brown v. Allen and other cases, 344 U.S. 443, 488, 73 S.Ct. 397, 437, decided February 9, 1953. It was because of the pendency of this case in the Supreme Court that we have delayed the decision on Thomas' appeal, awaiting the former's decision.

That opinion, in an elaborate review, disposes of the "baseless fear, a bogey man," that the habeas corpus proceedings are emptying the state penitentiaries, stating 344 U.S. at page 498, 73 S.Ct. at page 442 "* * * That wholesale opening of State prison doors by federal courts is, however, not at all the real issue before us is best indicated by a survey recently prepared in the Administrative Office of the United States Courts for the Conference of Chief Justices: of all federal question applications for habeas corpus, some not even relating to State convictions, only 67 out of 3,702 applications were granted in the last seven years. And 'only a small number' of the 67 applications resulted in release from prison: 'a more detailed study over the last four years shows that out of 29 petitions granted, there were only 5 petitioners who were released from state penitentiaries.' The meritorious claims are few, but our procedures must ensure that those few claims are not stifled by undiscriminating generalities. * * *"

Again, 344 U.S. at page 510, 73 S.Ct. at page 448 "The reliable figures of the Ad-

---

**3.** One judge dissenting, solely on the different ground that the application stated no ground for relief.

ministrative Office of the United States, supra [344 U.S. at page 498] 73 S.Ct. at page 442 showing that during the last four years five State prisoners, all told, were discharged by federal district courts, prove beyond peradventure that it is a baseless fear, a bogey man, to worry lest State convictions be upset by allowing district courts to entertain applications for habeas corpus on behalf of prisoners under State sentence. * * *"

In reaching the conclusion that Congress in enacting 28 U.S.C. § 2254 gives a federal district court the power to entertain applications for the writ alleging the violation of constitutional rights in ordinary cases without special circumstances, the opinion disposes of the contention that it acts as an inferior court as against a superior court in determining the validity of a decision of a state supreme court.

In that regard it states "Insofar as this jurisdiction enables federal district courts to entertain claims that State Supreme Courts have denied rights guaranteed by the United States Constitution, it is not a case of a lower court sitting in judgment on a higher court. It is merely one aspect of respecting the Supremacy Clause of the Constitution whereby federal law is higher than State law. It is for the Congress to designate the member in the hierarchy of the federal judiciary to express the higher law. The fact that Congress has authorized district courts to be the organ of the higher law rather than a Court of Appeals, or exclusively this Court, does not mean that it allows a lower court to overrule a higher court. It merely expresses the choice of Congress how the superior authority of federal law should be asserted." 344 U.S. at page 510, 73 S.Ct. at page 448.

The judgment is reversed and the district court ordered to entertain on its merits the application of Thomas.

MATHEWS, HEALY and BONE, Circuit Judges, dissent.