## UNITED STATES of America

v.

## James K. COPELAND, Defendant.

### No. 92 Cr. 886 (VLB).

United States District Court,
S.D. New York.

Sept. 7, 1993.

Cynthia Dunne, Asst. U.S. Atty., White Plains, NY, for U.S.

John Higgenbotham, New York City for James K. Copeland.

### MEMORANDUM

VINCENT L. BRODERICK, District Judge.

#### I

This memorandum explains my rulings in connection with a motion to suppress statements of the defendant, which presents issues concerning treatment of volunteered statements after an arrestee declines to sign a written *Miranda* waiver, and on the second day of detention, where a further warning is not given.

Defendant James K. Copeland ("Copeland") sought suppression of statements made on October 5, 1992 ("October 5") and October 6, 1992 ("October 6") after his arrest on October 5 in connection with robbery of a post office in Orangetown, New York earlier

that day. On June 21, 1993 I denied on the record Copeland's motion to suppress statements made on October 5, but granted suppression of those given while in custody on October 6.

#### II

An evidentiary hearing was held on Copeland's motion on June 21, 1993 at which two Postal Inspectors testified. Copeland was present in person but did not offer any evidence.

The Postal Inspectors' version of the facts was uncontradicted.[1] I found the Inspectors' testimony to be credible when tested upon cross examination as well on direct.

New Jersey police arrested Copeland in the vicinity of an Isuzu Trooper Rodeo rammed by police after a high speed chase originating in the area of the Orangetown robbery on October 5. Postal Inspectors arrived at the Norwood jail soon thereafter, and shortly after 6 P.M. on October 5 the Inspectors came to Copeland's cell.

The Inspectors identified themselves and read a *Miranda* warning to Copeland. Copeland was provided with a copy of the warning and signed on a line acknowledging receipt of the warning. Copeland was familiar with criminal justice procedures, having been arrested approximately six times previously. He declined to sign the waiver portion of the form, stating that he did not want to waive any rights before consulting an attorney, and did not wish to discuss his role in the events of October 5th, but did want to talk about other robberies concerning which he had knowledge in order to see if he could cut a deal. Copeland also told the Inspectors he wished to be removed from local custody in Norwood.

---

1. Copeland could have testified at the suppression hearing held pursuant to Fed.R.Crim.P. 12 and 41 without incriminating himself since the issues at the hearing did not pertain to his guilt, and testimony at the hearing would not necessarily be admissible at trial. Accordingly, I could properly have drawn an affirmative adverse inference against Copeland because of his failure to offer his own or indeed any evidence at the hearing. See generally *Lefkowitz v. Cunningham,* 431 U.S. 801, 805 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1 (1977); *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976); *Brink's, Inc. v. City of New York,* 717 F.2d 700 (2d Cir.1983); *RAD Services, Inc. v. Aetna Casualty & Surety Co.,* 808 F.2d 271 (3d Cir.1986); *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509 (8th Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). I did not find it necessary to do so however in order to reach the conclusion that the testimony of the Postal Inspectors was credible.

Copeland described a "group" connected with numerous past and future postal robberies and other crimes, and identified several pictures as likenesses of members of the group. Copeland asked about the condition of "his" truck which had been rammed by New Jersey police at the close of the chase; Copeland volunteered to one of the inspectors that his truck had been carjacked after which he was driven to the post office and then taken on the high-speed chase.

On some occasions Copeland changed the subject or told the inspectors he had already said too much about certain topics. The inspectors then asked Copeland about other matters.

On more than one occasion the Inspectors telephoned a number given by Copeland, who asked to speak with his wife; Copeland was then put on the line. At no time in the presence of the Inspectors or while speaking with them did Copeland request that an attorney be contacted, or to speak to an attorney. The Inspectors never questioned Copeland about his role in the events of October 5, nor did they threaten him with any consequences if he failed to cooperate; Copeland never requested that the discussions, which he initiated, stop.

Copeland told the Inspectors of concern that his wife might be in danger from "Big Mike," a leader of the "group" who might utilize violence. The Inspectors offered to provide assistance if asked, but this was never requested. The Inspectors told Copeland on several occasions that upon arraignment, he would be assigned counsel if he did not have an attorney.

All of the evidence indicates that Copeland was in control of his actions at all times and deliberately chose to talk with the inspectors about topics of his own choice while retaining the prerogative to limit those topics; at no time was there any indication that Copeland's will was overborne.

On October 6, Copeland was questioned further within the areas Copeland was willing to discuss, and thereafter arraigned. No additional warnings were delivered on October 6 prior to the additional questioning or the arraignment.

### III

The Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that "[i]f [an] interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475, 86 S.Ct. at 1628.

The Court further held that "[a]n express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Id.*

Although the Court held that an express statement can constitute a waiver, and that silence alone cannot, the "court did not hold that such an express statement is indispensable to a finding of waiver." *North Carolina v. Butler*, 441 U.S. 369, 372, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). An express written or oral statement of waiver of the right to remain silent or right to counsel is "not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *Id.;* see also *United States v. Spencer*, 1993 WL 187083 (2d Cir.1993); *United States v. Boston*, 508 F.2d 1171 (2d Cir.1974) (written waiver not required where defendant knew his *Miranda* rights). The "question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Butler*, 441 U.S. at 374–75, 99 S.Ct. at 1758, quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); see also *United States v. Spencer*, 995 F.2d 10 (2d Cir.1993).

Statements may be voluntary if the accused initiates "further communications, ex-

changes, or conversations" with the questioners. *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); See also *Oregon v. Bradshaw*, 462 U.S. 1039, 1045, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983).

The evidence in this case indicates that Copeland "knowing[ly]" and "intelligent[ly]" waived his right to remain silent and his right to counsel with respect to the statements made on October 5. Copeland spoke not at the urging of the inspectors, but on his own volition in order to attempt to limit his liability in the crimes of which he was accused. Copeland, having been arrested six prior times, was not a novice to the criminal interrogational process.[2] He was made aware of his rights, and although he chose not to sign a waiver, he initiated a conversation directly related to the investigation. This conversation was not initiated because of coercive actions by the inspectors but by the accused for his own reasons.

## IV

■ The purpose of the warnings prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is to help assure that statements made by suspects in custody and later used against them are voluntary. Coerced statements are both unreliable[3] and contrary to the privilege against self-incrimination provided by the Fifth Amendment.

The Fifth Amendment privilege seeks to avoid the hazards of compelled testimony against one's self in a criminal case, which include the danger of "crime ... to be ferreted out by searching the conscience of the accused," O.W. Holmes, "Law in Science—Science in Law," in *Collected Legal Papers* 213 (1921). Such ferreting offends freedom

of conscience because it intrudes upon the privacy of one's inner thoughts.[4] Coerced confessions in custody are also traditionally accompanied by use of violence.[5]

The Fifth Amendment privilege is also directed against the "trilemma" of contempt, perjury, or confession leading to conviction. *Murphy v. Waterfront Commission*, 378 U.S. 52, 55–57, 84 S.Ct. 1594, 1596–98, 12 L.Ed.2d 678 (1964).

Where a suspect affirmatively volunteers statements, and is in control of choices made, there is no compulsion as that term is used in the Fifth Amendment, nor are the objectives of the Amendment or its implementation through *Miranda* offended. See *Connecticut v. Barrett*, 479 U.S. 523, 529–30, 107 S.Ct. 828, 832–33, 93 L.Ed.2d 920 (1987); *United States v. Scarpa*, 897 F.2d 63, 69 (2d Cir.), *cert. denied*, 498 U.S. 816, 111 S.Ct. 57, 112 L.Ed.2d 32 (1990); *Bruni v. Lewis*, 847 F.2d 561, 563 (9th Cir.1988); *United States v. Eaton*, 890 F.2d 511, 513–14 (1st Cir.1989), *cert. denied*, 495 U.S. 906, 110 S.Ct. 1927, 109 L.Ed.2d 291 (1990).

The courts, beginning with *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936), have recognized that "coercion induced false confessions, and their admission violated due process." Broderick, "Interrogation and Confessions," in *Criminal Defense Techniques*, § 3.03, 3–9 (1970). Thus, "if a statement was not voluntary, if it was not 'the product of a rational intellect and free will, it was not admissible....'" Id. (quoting, *Blackburn v. Alabama*, 361 U.S. 199, 209, 80 S.Ct. 274, 281, 4 L.Ed.2d 242 (1960)).

In federal criminal trials, 18 U.S.C. § 3501 (1988) governs the admissibility of statements of defendants. Section 3501(a) pro-

---

2. See *United States v. Spencer*, 995 F.2d 10 (2d Cir.1993) (more than one arrest a factor in determining waiver by suspect).

3. See *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936); *Chambers v. Florida*, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940); *White v. Texas*, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342 (1940).

4. See generally *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178,

87 L.Ed. 1628 (1943); *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Parate v. Isibor*, 868 F.2d 821, 826–29 (6th Cir. 1989); United Nations Universal Declaration of Human Rights articles 1, 18 (1948).

5. See Thayer, "The Jury and Its Development—I," 5 Harv.L.Rev. 249, 267–72 (1892); Lowell, "The Judicial Use of Torture—II," 11 Harv. L.Rev. 290 (1897).

vides that the court "determine issues as to voluntariness." [6] Under § 3501(b) evaluation of voluntariness "shall take into consideration all the circumstances surrounding the giving of the confession." [7] The section goes on to set forth the factors which should be included in such analysis.[8] Although significant, the factors "need not be conclusive on the issue of voluntariness of the confession." 18 U.S.C. Section 3501(b).

Psychological coercion, although more "refined and subtle" than physical coercion, may overbear an accused's will. See *Jackson v. Denno*, 378 U.S. 368, 389, 84 S.Ct. 1774, 1787, 12 L.Ed.2d 908 (1964). The rights of the accused are infringed equally by "secret inquisitorial processes" as they are by overt physical mistreatment. *Chambers v. Florida*, 309 U.S. 227, 237, 60 S.Ct. 472, 477, 84 L.Ed. 716 (1940); see *White v. Texas*, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342 (1940); see also *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936).

The first factor set forth in § 3501(b) relates to the length of time "between arrest and arraignment of the defendant ..., if [the statement] was made after the arrest and before arraignment...." 18 U.S.C. § 3501(b)(1).[9] In the present case the period between arrest on October 5 and arraignment on October 6 was spent processing, feeding, conducting routine questioning, and lodging Copeland. Overnight lodging does not constitute unnecessary or unreasonable delay. See *Rubio* at 154; see also *United States v. Isom*, 588 F.2d 858, 862–63 (2d Cir.1978); *United States v. Ortega*, 471 F.2d 1350, 1362 (2d Cir.1972), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 1925, 36 L.Ed.2d 409 (1973); *United States v. Marrero*, 450 F.2d 373, 378 (2d Cir.1971). The delay between arrest and the confession on October 6, which was made prior to arraignment, is not unreasonable for purposes of § 3501(c) or unnecessary for purposes of Fed.R.Crim.P. 5(a).

The delay between arrest and the second day of questioning on October 6, although reasonable and necessary, still was long enough inherently to affect the will of the accused. Additionally, on October 6 Cope-

---

**6.** 18 U.S.C. Section 3501(a).

**7.** 18 U.S.C. § 3501(b).

**8.** Section 3501(b) includes five factors that should be taken into consideration:
(1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment,
(2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,
(3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,
(4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and
(5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.
18 U.S.C. Section 3501(b).

**9.** Under Rule 5(a) of the Federal Rules of Criminal Procedure and the *McNabb–Mallory* Rule there must not be an "unnecessary" delay in bringing an accused before a magistrate or other committing authority. See *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

18 U.S.C. § 3501(c), with greater specificity, addresses the question of delay. According to the statute, a confession "shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer" if such confession is found to be voluntary and "if such confession was made or given by such person within six hours immediately following his arrest or other detention." Additionally, the allowable period may extend beyond six hours if the delay is deemed to be "reasonable."

The Second Circuit views subsection (c) "as providing an independent basis for exclusion." *United States v. Perez*, 733 F.2d 1026, 1034 (2d Cir.1984). This enables one to view delay in two different lights. With regard to voluntariness of the statement the *reasons* for the delay have a lesser bearing than the effect of the delay on the will of the accused at the time of the statement; with delay as a completely separate category of admissibility, proper justification could cause a delay to become reasonable or necessary thus obviating suppression merely on the grounds of delay. In other words if delay beyond six hours is held not to be reasonable or necessary, suppression can be based simply on the grounds of delay, and the issue of voluntariness need not be reached. See generally *Perez*; see also *United States v. Shoemaker*, 542 F.2d 561, 563 (10th Cir.), *cert. denied*, 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976); *United States v. Rubio*, 709 F.2d 146 (2d Cir.1983).

land was not "advised ... that he was not required to make any statement and that any such statement could be used against him," nor was he was "advised prior to questioning of his right to the assistance of counsel." 18 U.S.C. § 3501(b).

The combination of these factors lead to the conclusion that the statements made on the second day of questioning by Copeland on October 6 cannot be deemed voluntary as defined by 18 U.S.C. § 3501(a), and thus are considered to be constructively involuntary and are suppressible.

### V

By letter to the court dated June 21, 1993, copies of which were not sent to defense counsel or the United States Attorney, the defendant James K. Copeland writes that he was unprepared for the suppression hearing held on June 17, 1993, that he did not have the opportunity to go over relevant questions with his attorney, and that he requested to be called as a witness at the hearing but had been advised not to testify. Mr. Copeland does *not* request that his counsel be changed.

A pretrial suppression hearing is held to determine whether potential evidence should be excluded *before trial.* In this case I granted Copeland's motion to suppress with respect to statements made on October 6, 1992 but denied the balance of his motion. Denial of portions of Mr. Copeland's motion does not establish the admissibility of the challenged evidence at trial.

Consequently, any additional testimony, argument or objections Mr. Copeland wishes to submit in opposition to admission of any evidence offered by the prosecution at the trial with respect to any statements made on October 5 may be offered at the time the prosecution offers such evidence. Denial of part of Mr. Copeland's motion to suppress will not bar him from raising any objections at that time; prosecution witnesses offering such evidence may also be queried by means of a *voir dire* out of the presence of the jury to the extent relevant questions not yet put are appropriate.

Mr. Copeland thus retains an adequate remedy for any deficiencies he believes exist-

ed in connection with the pretrial suppression hearing, without the need to consider reconvening that hearing prior to trial.

I have provided a copy of Mr. Copeland's letter of June 21, 1993 to his counsel.

SO ORDERED.